W. D. REYNOLDS, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

### Kansas City Court of Appeals, October 30, 1899.

1. **Telegrams: CONTRACT: DELIVERY.** A telegraph company receiving a message is only bound to do what it is paid for, to wit: transmit the same to the designated office and there make reasonable effort to deliver it within the free limit.

2. ——: ——: ——: ABBREVIATION: JURY QUESTION. In an action for a failure to deliver a telegram beyond the free limit, the testimony of the sender that "Gtd" indorsed thereon was understood to mean that the sender guaranteed all charges necessary for delivery, is enough to send the question to the jury, although in the usual course of business the guarantee was sometimes written out in full.

3. ——: DELIVERY: OTHER KNOWLEDGE: CATTLE SHIPPER. A cattle shipper has no action against a telegraph company for failure to deliver a telegram from his commission merchant, when, prior to shipping his cattle, he received from other sources information regarding the market as full as that contained in the undelivered message.

4. ——: DAMAGES: OTHER INFORMATION: INQUIRY. A party can not recover damages caused by the wrongful act of another, as a telegraph company, for a failure to deliver a telegram, when he might have averted the damages by trifling expense and reasonable exertion, to wit, in this case, sending a telegram of inquiry to his commission merchant.

5. **Damages: SPECULATIVE: MARKET FLUCTUATIONS.** Certain profits of a transaction may be recovered, but those dependent upon profits of a transaction may be recovered, but those dependent upon the fluctuations of the markets and the hazard and chances of business are too contingent and speculative. Damage arising from loss of profits in a common carrier's failing to deliver cattle on the market according to contract, distinguished.

Appeal from the Daviess Circuit Court.—*Hon. E. J. Broaddus*, Judge.

REVERSED.

*Karnes, Hagerman & Krauthoff* and *George H. Fearons* and *A. F. Smith* for appellant.

(1) The action is grounded on a negligent breach of contract on the part of the defendant. There was no negligent breach of the contract. Tel. Co. v. Trotter, 55 Ill. App. 659; Tel. Co. v. Taylor, 3 Tex. Civ. App. 310; 22 S. W. Rep. 532; Tel. Co. v. Henderson, 89 Ala. 510; Reese v. Tel. Co., 123 Ind. 294; Tel. Co. v. Lindley, 62 Ind. 371, 375; Green v. Cole, 103 Mo. 70, 76; Falls Wire, etc., Co. v. Broderick, 12 Mo. App. 378, 383; Robinson v. Estes, 53 Mo. App. 582, 585, 586; Tel. Co. v. Warren, 36 S. W. Rep. 315, 316; Whittemore v. Tel. Co., 71 Fed. Rep. 651. (2) The failure to deliver the message was not the proximate cause of his loss, if any. Buesching v. Gas Co., 73 Mo. 219, 229; Tel. Co. v. Harper, 39 S. W. Rep. 599; Douglass v. Stephens, 18 Mo. 362, 365, 366; Fisher v. Goebel, 40 Mo. 475, 481; Waters v. Brown, 44 Mo. 302; State ex rel. v. Powell, 44 Mo. 436, 440; Haysler v. Owen, 61 Mo. 270, 273, 274; Eoff v. Clay, 9 Mo. App. 176, 178; Harrison v. Railway, 88 Mo. 625; Railway v. McGrew, 104 Mo. 282, 291, 292; Alliance Trust Co. v. Stewart, 115 Mo. 236, 246. (3) Loss of possible or speculative profits is not subject to legal determination, and therefore no recovery can be had therefor. Griffen v. Colver, 16 N. Y. 489, 491; 8 Am. and Eng. Ency. of Law, 618; Hughes v. Tel. Co., 114 N. C. 70; Tel. Co. v. Hall, 124 U. S. 444; Tel. Co. v. Fellner, 58 Ark. 29; Hibbard v. Tel. Co., 33 Wis. 558, 569; Squire v. Tel. Co., 98 Mass. 232; Tel.

Co. v. Graham, 1 Colo. 230, 245, 252; Tel. Co. v. Barwise, 53 Pac. Rep. 252; Ferrerro v. Tel. Co., 9 App. D. C. 455; Duncan v. Tel. Co., 87 Wis. 173; Mondon v. Tel. Co. 96 Ga. 499; Martin v .Tel. Co., 18 Wash. 260; Meggett v. Tel. Co., 69 Miss. 198; Tel. Co. v. Crall, 38 Kan. 679; Thompson, Electricity, secs. 341, 343; Croswell, Electricity, sec. 629; 25 Am. and Eng. Ency. of Law, pp. 849, 850; Taylor v. Maguire, 12 Mo. 313, 319; Moore v. Winter, 27 Mo. 380, 382; Lewis v. Ins. Co., 61 Mo. 534, 539, 540; Connoble v. Clark, 38 Mo. App. 476, 482, 483; Tel. Co. v. Stevens, 16 S. W .Rep. 1095; Tel. Co. v. Linney, 28 S. W. Rep. 234; Tel. Co. v. Woods, 56 Kan. 737. (4) Plaintiff is not entitled to even nominal damages. Furniture Co. v. Monarch, 39 S. W. Rep. 823; Pickel v. St. Louis, etc., Ass'n, 10 Mo. App. 191; affirmed, 80 Mo. 65.

*Wm. D. Hamilton, Boyd Dudley* and *Henry L. Eads* for appellant.

Agent Powell, in charge of defendant's Pattonsburg office, an employee of defendant, and in the transaction of defendant's business, negligently and carelessly commits an error resulting in damages to plaintiff, and the defendant is liable. Streett v. Laumier, 34 Mo. 469; Paint Co. v. Conlon, 15 Mo. App. 601; Hilsdorf v. St. Louis, 45 Mo. 94; Canfield v. Railroad, 59 Mo. App. 354; Jennings v. Schwab, 64 Mo. App. 13. The defendant is liable for the negligence of the servant in transacting the business for which he was employed. Douglass v. Stephens, 18 Mo. 362. Even though the act of the servant was not necessary for the proper performance of his duty to the master. Ephland v. Railway, 137 Mo. 187; Snyder v. Railway, 60 Mo. 413; Schmidt v. Adams, 18 Mo. App. 432, 434; Garretzon v. Duenckel, 50 Mo. 104; Wood on Master and Servants, sec. 267; Meade v. Railway. 68 Mo. App. 98; Haehl v. Railway, 119 Mo. 339,

SMITH, P. J.—This is an action on contract to recover damages. The case may be stated about this way: In December, 1897, the plaintiff, who resided about six miles from Pattonsburg, in this state, was the owner of a number of cattle which he intended to ship to Olander & Isaacson, his commission merchants at Kansas City, for sale on the market there; that on the eighth of said month McCroskey, a cattle salesman of said commission merchants, who having been apprised of such intention delivered to defendant the following message:

"12-8, 1897.

"To W. D. Reynolds, Pattonsburg, Mo.:

"Cattle awful mean. Hold yours if you can. Hogs two to five lower.          T. G. McCroskey.

"Gtd. Olander & Isaacson."

The defendant's manager who received the message for transmission understood the abbreviation "Gtd." to mean no more than that the payment of the usual tolls for the said message were guaranteed by the senders. The message was promptly sent to Pattonsburg but not delivered for the reason that the plaintiff was at his residence six miles away, and could not consequently be found within the free delivery limits of the terminal office; that on the next day, the ninth, the manager of the last named office sent a service message to the sending office notifying it that the said message had not been delivered. The latter was delivered to the senders at 2:30 p. m. of the day it was sent. The senders paid no attention to this message. At about noon of said last named day the plaintiff came with his cattle to said town, which was a railway station, and during the afternoon he read the Kansas City market report of the preceding day in which it was in substance stated that: "Cattle were too plenty for the demand on many kinds  *  *  *  Cattle that in most years would go for Christmas beeves were dull  *  *  *  The bottom has fallen out of the market this week  *  *  *  Yesterday's market was 25 cts. uneven, and to-day's 25 cts. uneven again,

showing no certain standard of values * * * Buyers went into the yards late and bid badly lower, often 20 to 25 cts. Where buyers and sellers got together and traded, the decline figured about 10 to 15 cts."

Notwithstanding this information, the plaintiff, about 1 o'clock of that night, shipped his cattle to the Kansas City market where they were sold on the next day, the 10th. It appears from the evidence that the depression in the cattle market continued until the 13th, when there was some slight improvement in it. On the 14th, all kinds of cattle sold better than the preceding week. "The demand was good and trade active at steady to 10 cts. advance, mostly steady." The plaintiff's claim is that he has been damaged to the amount of the difference which his cattle brought when sold on the Kansas City market on the tenth of December and that which they would have brought, had the same not been sold until the 14th of that month. There was a trial resulting in judgment for plaintiff and from which defendant has appealed. Quite a number of questions have been raised by the appeal and discussed in the briefs of counsel, but of these we shall only notice such as arise on the demurrer to the evidence.

The usual contract entered into between the sender of a telegraphic message and the telegraph company is to the effect that the latter agrees to transmit, with the aid of electricity, the intelligence contained in the message of the former to the place of destination and there write it out and deliver it to the addressee. Brashears v. Telegraph Co., 45 Mo. App. 443. But when the addressee does not reside nor is to be found within the free delivery limits of the terminal office the company is not required to deliver the message unless it has specially agreed with the sender so to do. It is bound to do no more than it is paid for, that is, transmit the message to the designated office and there make reasonable effort to deliver it within the free limit. Telegraph Co. v. Taylor, 3 Tex. Civ. App. 310; Telegraph Co. v. Trotter, 55 Ill. App. 659.

It is conceded that the addressee, the plaintiff in the present case, resided outside of the free limit of the terminal office, but it is insisted that the defendant agreed with the sender that in consideration of the guarantee by the latter of the extra expense required to accomplish the delivery of the said message to the addressee, the former bound itself not only to receive and transmit said message but to deliver the same to the addressee outside of the free limit, and it is for a breach of this that the plaintiff claims damages. It is objected by the defendant that there is a total failure of evidence tending to prove any such special agreement between the sender and the defendant for the delivery of the message outside of the free limit. The only evidence of such agreement is to be found in the abbreviation "Gtd" which was written by the sender on the message. McCroskey testified for plaintiff that the abbreviation placed on the message by him meant that the senders guaranteed all the necessary charges for the delivery of the message and that it was so understood between him and the defendant, and that in the usual course of business the guarantee was sometimes written that way and at others it was written out in full. While this evidence of the special agreement for the delivery of the message outside of the free limits was rather slight still it must be regarded, under the rules of appellate practice prevailing in this state, as sufficient to warrant a submission of the case to the jury, if there is nothing else in the way.

The defendant further objects that even if both the existence of the special agreement and the breach thereof be conceded, the plaintiff ought not to recover since it plainly appears from the evidence presented by the record that the failure to deliver the message was not the proximate cause of the loss or damage claimed by plaintiff. If this be so, it was the duty of the trial court to have taken the case from the jury by declaring, as a matter of law, that there could be no recovery by plaintiff. Buesching v. Gas Co., 73 Mo.

219.  It is the well established rule of law in this state that where a recovery of damages is sought on the grounds of negligence it must appear that such negligence was the immediate and direct, the mere proximate cause of the damages.  Buck v. Railway, 46 Mo. App. 555, and authorities there cited; Hicks v. Railway, 46 Mo. App. loc. cit. 309; 1 Sutherland on Dam. 23.

The question now is, whether or not the negligence of the defendant, in respect to the delivery of the message, was the direct and proximate cause of the damages claimed by the plaintiff?  Undeniably the evidence discloses that nearly ten hours before the plaintiff shipped his cattle he saw the Kansas City market report as to the condition of the cattle market there on the preceding day, the 8th.  He was thereby informed that "the bottom had fallen out of the cattle market" and of the extent of the decline in the value of the various kinds of cattle.  This information was fuller and more in detail than that which the plaintiff's commission merchants had sought to transmit to him by their telegraphic message. There was no fact or suggestion of fact contained in the said message that was not stated more in detail in the said market report.  The very purpose of the publication of the market reports is to advise those interested in live stock as to the current sales and value thereof at the Kansas City market. If the plaintiff, before shipping his cattle, had met his commission merchants face to face they could have added nothing to the information which he had gleaned from the market report.  The plaintiff when he shipped his cattle was in possession of every fact in respect to the market value thereof that was stated in the undelivered message.  He did not ship his cattle in ignorance of the state of the market.  Can he now be heard to claim that the negligence of the defendant in delivering him the said message has a causal connection with the damages he claims?  It may be fairly inferred if the message had been delivered to the plaintiff, according to the

requirements of the defendant's agreement, that he would still have shipped his cattle when he did since the intelligence contained in said message was fully imparted to him by the market report which reached him before the shipment was made. If the intelligence contained in the market report did not cause plaintiff to delay the shipment of his cattle why would similar intelligence in the message have so influenced his action? The plaintiff, it is true, testified that he would not have shipped his cattle had he received the message before doing so, but this testimony is quite difficult to reconcile with his further testimony to the effect that the reason why he made the shipment after seeing the report of the condition of the market was that he had previously purchased a number of the cattle he was so shipping from various parties residing in the vicinity of the place of shipment who had previously engaged to deliver them to him on the day he made the shipment, and that, having received them, he had no way to hold them without expense and so to avoid this he made the shipment. It is difficult to see how his situation would have been different had he found out the condition of the market from the message instead of from the market report.

The evidence does not, in our opinion, justify the conclusion that but for the negligence of the defendant the plaintiff would not have shipped his cattle when he did but would have waited until four days later before doing so, and that therefore it must needs follow that the negligence of the defendant was not the proximate cause of the plaintiff's damages. The plaintiff in the statement of his cause of action alleges that the defendant negligently failed to deliver said message to him at Pattonsburg as it agreed to do, in consequence of which he shipped two car loads of cattle to Kansas City on a bad market to his damage in the sum of $81.20. As already stated, the evidence shows that the plaintiff was fully apprised when he shipped his cattle of the depressed condition of the market. The commission merchants who

were his agents, knew at 2:30 in the evening of that day that he had not received their dispatch, yet they made no effort to prevent him from subsequently shipping. If the plaintiff was not satisfied with the information he had as to the condition of the market he could have obtained further information by telegraphing to Kansas City. If he had done this he would have suffered no further loss than the cost of the telegrams each way; and if the negligence of the defendant caused him to incur the expense of these two messages the defendant would have been liable therefor. The rule has always been that a party can not recover any damages caused by the wrongful act of another which might have been averted at a trifling expense and by reasonable exertions. Douglass v. Stephens, 18 Mo. 362, and other cases cited in defendant's brief. It therefore seems to us that upon the undisputed evidence the plaintiff ought not to recover for the loss which he claims. There is nothing in Reed v. Telegraph Co., 135 Mo. 674, that is at variance with what has just been stated.

It is objected that the only damages which the evidence tends to show the plaintiff sustained is the difference between what the cattle were worth on December the 10th and what they might have been worth on a subsequent day when the market should be better, which happened to be the 14th of said month. It is not controverted that plaintiff's cattle sold on the tenth of December for just what they were worth. If the plaintiff had held them until the 14th of that month they might have been worth more. He might have, by so doing, realized a greater profit than he did. But who can tell whether he would have held them until the last named day, or, if so, that he would not have held them still longer and for a further advance? He might have held them until there was a further decline in prices, if such was the case. Profits which would have certainly been realized but for defendant's fault are recoverable, but those which are speculative and contingent are not. Griffen v. Colver, 16 N. Y. 489.

Lail & Hull v. Pac. Ex. Co.

Profits which depend upon the fluctuation of the markets and hazard and chances of business are considered too contingent and speculative to enter into a safe or reasonable estimate of damages.    8 Am. and Eng. Ency. of Law, 618.

This case is not analogous to that where a shipper is delayed in getting his property to market until there is a decline in the price there and whereby he is compelled to sell for a less price than he would have obtained had the carrier kept his contract.    Wilson v. Railway, 66 Mo. App. 388. In such case the damages are certain and not speculative and contingent and are therefore properly allowed.    But in a case like that disclosed in the evidence here, the profit—the basis of the claim of damage—is too speculative and contingent to be the subject of a recovery.    Many adjudged cases aptly illustrating the application of the principle of the rules just stated are cited in the defendant's brief and may be referred to.

In our opinion the evidence did not warrant a verdict for plaintiff and accordingly we shall reverse the judgment. All concur.