D. C HARRINGTON et al., Respondents, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, March 1, 1915.

1. **TELEGRAPHS AND TELEPHONES: Negligence: Proximate Cause of Injury.** A telegraph company, by mistake, transmitted an offer of seventy cents per bushel for grain as seventy-nine cents. On the next day the vendor accepted the offer of "seventy-nine cents." And on the next day the vendee advised him by telegraph that the offer was seventy cents, and on the second day after again advised him the offer was seventy cents and if not acceptable to say so "quick." The vendor delayed for three days when he offered to accept that price; but as the market had declined seven cents, the vendee refused, and the vendor sold at the latter price. In an action by the vendor against the telegraph company for damages on account of the

mistake in the first telegram, it was *held* that such telegram was not the proximate cause of the damage.

2. ———: Avoidable Injury: Duty. It is the duty of one receiving a telegram from a telegraph company in which there is an error in transmission to minimize the damages as much as he reasonably may. And if the mistake is in stating an offer for his grain and he learns of the mistake, and the real offer, in time to have sold at that price, he cannot recover damages from the telegraph company for a delayed sale afterwards, at a decreased price, caused by a decline in the market.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Special Judge.

REVERSED.

*New & Krauthoff, Edwin Camack* and *George H. Fearons* for appellant.

*Glen R. Donaldson* for respondents.

ELLISON, P. J.—Plaintiffs begun an action against defendant before a justice of the peace, by filing a written statement claiming damages for negligently transmitting and delivering to them a telegram concerning the price of grain. They recovered judgment before the justice and also in the circuit court on appeal.

In April, 1908, plaintiffs shipped a car of grain from a point in Minnesota to the Rothschild Grain Company in Chicago, Illinois. The grain arrived at the latter place on April 25th and that company immediately wrote a telegram to plaintiffs offering seventy cents a bushel and delivered it to defendant for transmission over its line. In sending it over the wire, or in taking it off the wire, defendant added the word "nine" after the word "seventy," thus making it read as an offer of seventy-nine cents per bushel. On Sunday the 26th plaintiff telegraphed to Rothschild an acceptance of "seventy-nine cents." On next day,

the 27th, Rothschild telegraphed that the offer was seventy cents. Being unable to understand the offer of seventy-nine and then of seventy cents, plaintiffs testified they "immediately took it up with Rothschilds by letter." Then Rothschild, on Monday the 27th telegraphed plaintiffs that the grain was "worth seventy will book that basis or turn over, advise." Then, on same day, Rothschild telegraphed plaintiffs as follows: "Seventy cents Chicago basis as wired Saturday, best can do, advise." One of plaintiffs testified that they did not receive that telegram. But whether they did or not, they received the other one of the same day, and allege in their statement that they were advised of the error on that day, Monday the 27th. Then on Wednesday, the 29th, Rothschild again telegraphed plaintiffs as follows: "Our bid on consigned car was seventy, if not acceptable give positive instructions quick." This was evidently in response to plaintiffs' letter. But plaintiffs took no action for three or four days and then authorized Rothschild to sell for seventy cents. But the price had then declined to sixty-three cents and plaintiffs were compelled to sell at that figure involving a loss, as they claim of seven cents a bushel as well as $5 "trackage."

Plaintiffs did not suffer any damage merely by reason of the first telegram stating an offer of seventy-nine cents and accepting it, for there had been no such offer. If, on account of such mistake, they had been induced to do something, or to abstain from something, to their detriment, there would be damage. But to be merely informed of an offer that had not been made and to accept that offer, is of no consequence.

Plaintiffs source of damage, if any, was in not being correctly informed of the offer of seventy cents, so that, by accepting it, they would have made the sale at that price. And that is the ground relied upon in their statement; for they charge the grain was worth seventy cents which they could have gotten, but failed

to get it "on account of the delay caused by the erroneous transmission," whereby, because of a falling market, they sold at sixty-three cents "a loss of seven cents a bushel," making "a total loss due to said decline of $129.05, and a trackage charge of $5."

Now the facts of the case show that as early as the 27th plaintiffs knew, and so allege, that the real offer was seventy cents. Yet they did not accept it. Finally, on the 29th the offer of seventy cents is again made, with urgent request that they answer "quick." Still they did nothing for three or four days, when, on May 2nd, they made known their willingness to sell. But in the meantime the price had dropped to sixty-three cents at which figure they sold. When one of the plaintiffs was asked on cross-examination why, when he received the telegram of April 29th, he did not close the sale at seventy cents, he made the singular and highly unsatisfactory answer: "Because it was nine cents less than I was offered on April 25th," when he knew then, and, according to the allegation in his statement, had known since the 27th, that that was a mistake and there had been no such offer. Again, he stated that "as soon as I learned that the error claimed in the quotation (telegram) of April 25th I tried to dispose of the barley to Rothschild at the price they offered in their telegram of April 27th." This is flatly contradicted by the telegram and his confessed delay till May 2nd. He then stated that May 2nd "was as soon as I was able to arrive at disposing of the car of barley." This is not easily understood. Not being able "to arrive" at disposing of it, probably means that not being able to make up his mind, he dallied from April 27th, or at least the 29th to May 2nd.

It is manifest that the mistake of the telegraph company on April 25th was not the proximate cause of plaintiffs' loss on the 2nd of May. [Sutherland on Damages, sec. 968.] The cause of the loss was plaintiffs' inexcusable neglect to accept the seventy cents

during the four or five days in which the opportunity was presented to him. One cannot stand by and see himself harmed when he may easily avoid the harm. [Jones on Telegraph Companies, sec. 320; Reynolds v. Western Union, 81 Mo. App. 223, 231; Miller v. Telegraph Co., 157 Mo. App. 580; Marr v. West Union, 85 Tenn. 529.]

In the last of these cases, Judge LURTON of the Supreme Court of Tennessee, said (p. 550) that, "The law imposes upon a party subjected to injury by the action of another the active duty of making reasonable exertions to render the injury as light as possible. Where the injury results from breach of contract or unintentional negligence, this obligation to reduce the consequences of the injury by reasonable diligence is positively imposed by every consideration of public interest and sound morality; 'and if the injured party, through negligence or willfulness, allow the damages to be unnecessarily enhanced, the increased loss falls justly on him.' "

The decisions in those cases are but an application of the well known rule of avoidable consequences.

No case was made for plaintiff and we reverse the judgment. All concur.