## KAUFMAN v. CAUGHMAN.

1. WILL—EVIDENCE.—In a contest of *will* or *no will* before a jury, it is not error to admit in evidence the paper, where one witness swears the witnesses signed before testator.

2. IBID. — IBID. — TESTAMENTARY CAPACITY—PRESUMPTION.—Upon proof of the formal execution of a will, including the legal attestation and subscription by the witnesses, presumption of testamentary capacity arises.

3. IBID.—WITNESS—EXECUTION OF WILL.—Where three persons, at the request of testator, witness the signature of the testator and that of each witness to the will, it does not matter which signs first, the witnesses or the testator, provided the whole is one and the same transaction. *Chase* v. *Kittridge*, 11 Allen, 57, *distinguished from this.*

4. IBID.—EVIDENCE—DECLARATIONS—UNDUE INFLUENCE.—External acts of undue influence on a testator's mind cannot be shown by declarations of testator after execution of will; but where there has been proof of acts tending to undue influence, it is competent to show by such declarations the effect such acts had on testator's mind.

5. IBID.—WITNESS—SANITY OF TESTATOR—OPINION.—A subscribing witness to a will may give his opinion as to the sanity of the testator at the time of the execution of the will.

6. IBID.—EVIDENCE—DECLARATIONS—UNDUE INFLUENCE—FRAUD— REBUTTAL.—To rebut the idea of fraud or undue influence, and to show that the will is the deliberate mind of the testator, previous declarations of testator, consistent with the scheme of the will, are admissible.

7. TESTIMONY DE BENE ESSE—REV. STAT., 2347.—The requirements of Rev. Stat., 2347, as to testimony *de bene esse*, were substantially complied with in this instance.

8. WILL—DECLARATIONS.—Previous declarations of a testator in conformity with the provisions of the will are admissible.

9. REQUESTS TO CHARGE—SUPREME COURT.—Memoranda written by Circuit Judge on margin of requests to charge as his reasons for refusal, but not read to the jury, are no part of his charge, and will not be considered here.

10. WILL.—There is no such doctrine in this State, that a will must be consistent, and must not be unequal.

11. IBID.—CHILD—TESTAMENTARY CAPACITY.—The omission of a child from a will is no ground for impeaching the testator's capacity.

Before GARY, J., Lexington, February, 1896.  Affirmed.

Proceeding in the probate court of Lexington County by Julian E. Kaufman, executor, to prove in due form of law the will of Mrs. Lucinda Drafts, at the instance of her daughter, Mrs. Ella Caughman.  The probate court set up the will, and the contestant appealed to the Circuit Court, which found in favor of the will.  Contestant appeals, on the following exceptions:

1. Because his Honor erred in allowing proponent to introduce the paper, which he was seeking to establish as the last will and testament of Mrs. Lucinda Drafts, deceased, in evidence at the termination of the examination in chief of the three attesting witnesses, when one of them, Dr. Hendrix, had positively stated, time and again, that the three subscribing witnesses signed their names, in attestation of the execution of the paper, before the testatrix had signed her name thereto; and when Dr. Dreher, one of the subscribing witnesses, had absolutely failed to prove the mental capacity of testatrix at the time of signing said paper.

2. Because his Honor erred in excluding the testimony of witness, A. Marks, by whom contestant proposed to prove the declarations of Mrs. Drafts, after she had executed said paper, going to show that the contents of said paper was not the free and unbiased dictates of said testatrix's mind when she signed the same.

3. Because his Honor erred in allowing the witness, G. T. Graham, to answer in a general way whether or not Mrs. Lucinda Drafts was emotionally or morally insane at the time of the execution of said paper, he not being an expert.

4. Because his Honor erred in permitting the testimony of S. P. Wingard, D. T. Barr, and S. P. Drafts as to the general mental capacity of Mrs. Lucinda Drafts, they not being experts.

5. Because his Honor erred in permitting the testimony of S. P. Drafts, Eml. Corley, Mrs. Ella Daly, and Miss Lizzie Souter as to declarations of Mrs. Lucinda Drafts in

reference to the disposition of her property, the same being offered in reply by proponent, and not in chief.

6. Because his Honor erred in allowing the testimony of Mrs. Beeland, taken *de bene esse*, to be introduced, when no showing whatever was made to the Court that said witness was absent and not in Court and without the jurisdiction of the Court.

7. Because his Honor erred in allowing the letters of Mrs. Lucinda Drafts to Mrs. Beeland to be introduced and read in evidence.

8. Because his Honor erred in charging the jury that it mattered not who signed the paper first, the testatrix or the witnesses, and all that is necessary is that the signing should be contemporaneous and in the presence of each other.

9. Because his Honor erred in refusing to charge that: If the jury shall come to the conclusion, from the testimony before them, that Mrs. Lucinda Drafts signed the paper— if they should find that they signed it at all—after either one or more of the witnesses had signed his or their name thereto in attestation thereof, then they must find no will.

10. Because his Honor erred in refusing to charge that: If the jury should conclude, from the testimony and the contents of the paper which the proponent is seeking to establish as a will, that its contents are inconsistent with natural justice, it will require strong proof of capacity and volition to sustain it. And in assigning as his reasons for such refusal "that there is no proof that the will is against natural justice."

11. Because his Honor erred in refusing to charge that: If the jury should conclude that the contents and provisions in the proposed will are inconsistent with natural justice, it will require strong proof of capacity and volition to sustain it, and slight proof of undue influence or fraud to set it aside. And in assigning as his reasons for such refusal that "there is no proof of the facts on this point."

12. Because his Honor erred in refusing to charge that:

11–49

If the jury should find from the testimony that the provisions of the proposed will are inconsistent with natural justice, or there is gross inequality therein, and no reason is suggested in the paper itself or by proof on trial, then they should find no will. And in assigning for such refusal that: "It is not for the jury to say that, for the reason one child of testatrix is not provided for in a will, that it is against natural justice."

13. Because his Honor erred in refusing to charge that: If the jury should find from the testimony that Mrs. Drafts was an aged person; that she was in feeble health, suffering from an incurable disease, and that she died shortly after the execution of the paper; and that its provisions were not only grossly unequal, but against natural justice; and that there is no satisfactory evidence that it was the free and deliberate offspring of a rational, self-poised, and clearly disposing mind, they must find no will. And in assigning as his reason for such refusal, "that the mere fact that a child of testatrix is not made equal or provided for, that the will is grossly unequal."

*Messrs. Meetze & Muller*, for appellant, cite: *Attestation of will:* 1988, Rev. Stat.; 1 Bay, 349; 12 Tiffany, 161; 5 Stat., 106; 6 Stat., 238; 11 Allen, 49; 2 Cur., 865; 3 Cur., 117; 29 S. C., 31.

*Messrs. G. T. Graham* and *Andrew Crawford*, contra, cite: *Attestation of will:* 8 Rich., 141; 2 Rich., 229; 4 McC., 183; 91 N. Y., 225; 77 Ib., 369; 94 Ib., 554; 95 Ib., 330; 31 S. C., 348; 1 Mills, 333; 5 Rich., 212; 7 Rich., 479. *Declarations after execution to show undue influence not admissible:* 64 Tex., 411; 27 W. Va., 796; 37 Ind., 21; 77 Ill., 397; 14 B. Mon., 481; 42 Mich., 206; 25 Ib., 505; 24 Mo., 227; 90 Ill., 134; 22 Kan., 69; 2 Johns., 31; 1 Gallis, 170; 8 Conn., 254; 16 S. & R., 403; 11 Ind., 95; 3 W. Va., 629; 74 Ind., 370; 90 Ind., 433; 36 N. J. Eq., 259; 4 Dutch., 274; 99 Mass., 122; 87 Mo., 480; 45 N. J. Eq., 726; 122 Penn. St., 239; 40 N. J. Eq., 520; 153 Mass., 487; 134 U. S., 47. *Sub-*

*scribing witness may give opinion as to mental capacity of testator:* 3 Mass., 330; 34 N. Y., 190; 62 Me., 369; 12 Penn. St., 27; 40 Penn. St., 483; 68 Ib., 342; 27 Gratt., 96; 2 Haust., 418; 6 Ga., 324; 2 Cold., 139; 6 Ib., 21; 34 Ala., 469; 15 Ark., 556; 17 Ib., 292; 19 Ib., 533. *Moral or emotional insanity is not insanity:* 4 McC., 183; 52 Wis., 543; 3 Wall., Jr., C. C., 88. *Witness who personally knows testator may give opinion as to sanity:* 2 Ired., 78; 27 Conn., 193; 56 N. H., 227; 3 Hagg. Ecl., 574; 95 U. S., 232. *Previous declarations consistent with will admissible:* 17 Ala., 55; 4 Bradf., 311; 16 R. I., 640; 6 Rich., 14; 4 McC., 194; 2 Rich., 229. *Will cannot be impeached because unjust to relatives, or child left out:* 4 McC., 183; 7 Rich., 479.

April 6, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. Mrs. Lucinda Drafts made a paper purporting to be her last will and testament on the 19th day of June, 1891, and soon thereafter, on the 9th day of September, 1891, died. This paper was admitted to probate in common form October 27th, 1891. At the instance of the appellant, Mrs. Ella Caughman, the judge of probate for Lexington County required said will to be proven in solemn form of law, and after hearing the case, on the 25th day of October, 1894, filed his decree sustaining the will. On appeal therefrom to the Circuit Court, the cause was heard before Judge Ernest Gary and a jury, February term, 1896. On motion of the contestant, the proponent consenting, the following issues were referred to a jury for their finding: 1. Was the paper purporting to be the last will and testament of Mrs. Lucinda Drafts, deceased, legally executed? To which the jury responded, yes. 2. Was there undue influence exercised over said Mrs. Lucinda Drafts to induce her to sign said instrument of writing? To which the jury responded, no. 3. Was the said Mrs. Lucinda Drafts of sound and disposing mind and memory at the time said paper is purported to have been executed? To which the jury responded, yes. Whereupon Judge Gary made his decree ad-

judging said findings to be satisfactory to the Court, and sustained by the evidence adduced, and that said writing was the last will and testament of Mrs. Lucinda Drafts. The contestant now appeals to this Court on the grounds set out in the report of this case.

As to the first ground of appeal. We do not think the Circuit Judge erred in allowing proponent to introduce the paper, which he was seeking to establish as the last will and testament of Mrs. Lucinda Drafts, deceased, in evidence at the termination of the examination in chief of the three subscribing witnesses, merely because one of them testified that the witnesses signed the will before the testatrix. The two other subscribing witnesses had testified that the testatrix signed first. So that admitting that the order of signing was material, for the purpose of this particular exception, it was not error to allow the writing to go before the jury. Had the Circuit Judge ruled out the writing on this ground, he would, as he said, have taken from the jury the very question which the parties had agreed should be submitted to a jury; had he so ruled, he would have also invaded the province of the jury by deciding himself the question of fact in issue. In *Bauskett* v. *Keitt*, 22 S. C., 188, where two witnesses testified that they with another person, naming him, had witnessed a will, and this other person denied it, it was held that it was properly left to a jury to be determined by them.

We do not find in the record that any objection was made to the introduction of the paper, purporting to be the will, on the ground that one of the subscribing witnesses had failed to testify as to the mental capacity of the testatrix, hence the second part of exception one is not properly before us. We may say, however, that the objection, if it has been made, is untenable. The family physician of the testatrix, who was one of the subscribing witnesses, testified that she was mentally sound at the time of the execution of the will. This was not contradicted by either of the other subscribing witnesses, and if it had been,

the question, like the question as to the order of signing, was for the jury. It is not incumbent upon the proponent of a will to prove in the examination in chief the fact of the testator's sanity by taking the opinion of the subscribing witnesses on that point. When proponent proves the formal execution of a will, including the attestation and subscription of the witnesses, as required by law, a presumption of testamentary capacity arises, since every adult is presumed sane until the contrary appears, and since witnesses when they attest and subscribe a will as such, not only attest the *fact* of the testator's *signing*, but also the testator's *sanity*. *Heyward* v. *Hazard*, 1 Bay, 349. In this case proponent called all the witnesses to the will and placed them on the witness stand, and contestant had every opportunity to interrogate them as to the testator's sanity. In *Welch* v. *Welch*, 9 Rich., 133, it was held, that it was not necessary that each attesting witness should prove the signature of the testator; it is sufficient if it be proved by the other attesting witnesses. The same rule would apply on any other issue on the question of will or no will.

We will next consider the eighth and ninth exceptions, which raise the question whether the order of signing the will by the testatrix and the subscribing witnesses is material, so as to affect the validity of the will, when the signing by both testatrix and witnesses are substantially contemporaneous, and constitute one and the same transaction. The Circuit Judge charged the jury pointedly, that the order of signing, under such circumstances, would not affect the validity of the will. In this case, two of the subscribing witnesses testified that the testatrix signed first, and then the witnesses signed; while one of the subscribing witnesses testified that the order of signing was just the reverse. So far as we are informed, there is no decided case in this State on this point, and there is quite a conflict in the decisions elsewhere. There is no doubt that under Statute 1 Vict. C., 26, the Courts of England held, that the signature or acknowledgment of the tes-

tator must precede the subscription by the witnesses. Am. & Eng. Enc. Law, vol. 29, p. 209; Jarman on Wills, vol. 1, p. 138; 2 Curt., 865; 3 Curt., 117, 648. That statute provides: "That no will shall be valid unless it shall be in writing and executed in manner hereinafter mentioned— that is to say, it shall be signed at the foot or end thereof by the testator, or by some other person in his presence, and by his direction, and such signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the time; and such witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." This statute clearly places more stress on the mere manner of executing wills than ours, and by a very strict construction, it may be that the "*signature*" of the testator, which is required to be made or acknowledged in the presence of the witnesses, should be made or acknowledged before they attest. Our statute provides, sec. 1988, Rev. Stat.: "All wills and testaments of real and personal property shall be in writing, and signed by the party executing the same, or by some other person in his presence, and by his express directions, and shall be attested and subscribed, in the presence of the said testator and of each other, by three or more creditable witnesses, or else they shall be utterly void and of none effect." Under this statute, the witnesses attest not merely the *signature* of the testator, but they attest the *will*, which is not merely the paper containing a declaration of the testator's mind or will, but includes all the statutory requirements essential to constitute the writing a will. If it be asked, as Sir Herbert Jenner Fust asked in 2 Curt., 865, "Is the paper a will before it is signed by the testator?" or if it is asked, can witnesses attest a will before it is made? The answer is, the testator's signature does not make the will, and that there is no will until testator and witnesses have all signed. In acts substantially contemporaneous, it cannot be said that there is any substantial priority. The undisputed evidence was, that the paper was

signed by the testatrix and the witnesses, by each in the presence of all the others, on a piano in the parlor of Mrs. Drafts, in the same interview, each signing immediately after the preceding one. Before any one signed, the testatrix said, "Gentlemen, this is my will; will you witness it?" or words to that effect. Under such circumstances, the mere order of signing can make no sort of difference. No doubt, the usual and more orderly mode of executing a will is for the testator to sign first, and then the witnesses; but to hold that a mere change in the order of signing, accidentally or otherwise, would destroy the writing as a will, is to sacrifice substance for mere form. When the statute expressly, or by necessary inference, requires such formality, then nothing is left but to enforce it; but the Court will not stress formalities which the statute does not. Our view is supported by a number of cases cited in A. & E. L., vol. 29, p. 210, as follows: *O'Brien* v. *Galagher*, 25 Conn., 229; *Sechrest* v. *Edwards*, 2 Metc. (Ky.), 163; *Swift* v. *Wiley*, 1 B. Mon. (Ky.), 114; *Upchurch* v. *Upchurch*, 16 B. Mon. (Ky.), 113; *Miller* v. *McNeill*, 35 Pa. St., 217; 78 Am. Dec., 333; *Rosser* v. *Franklin*, 6 Gratt. (Va.), 1; 52 Am. Dec., 97. One of the leading cases in this country cited to sustain the contrary view is *Chase* v. *Kittridge*, 11 Allen (Mass.), 57. In this last named case, a witness had signed before the testator signed, *and in his absence.* The real question in the case was, whether the witness could acknowledge his signature in the presence of the testator and thus comply with the Massachusetts statute requiring that witnesses to a will should subscribe in the presence of the testator. The Court held that he could not. Quite a different question from the one presented here.

As to the second exception. Contestant desired to prove by the witness, A. Marks, a conversation had by witness with the testatrix some time after the execution of the will. When witness was asked to state what the conversation was, on objection raised, the question was ruled to be incompetent. It appears from the record that the

conversation sought to be proved was to this effect:
"That Mrs. Drafts said she was not well, and spoke as if
she thought she would not live long; witness said, 'Well,
I suppose you have everything fixed and your business ar-
ranged;' she replied, 'No, I want to see Ella; Graham did
not do her right.'" There was no error in ruling the ques-
tion incompetent. In the first place, it does not appear to
have any relevancy to any issue before the jury. In the
second place, if the object was to show that some one exer-
cised undue influence over the testatrix in the execution of
her will, it is a well settled rule of evidence that external
acts of undue influence cannot be shown by the declarations
of the testator after the execution of the will. Such evi-
dence is hearsay. As said by Thompson, J., in *Jackson* v.
*Kniffen*, 2 Johns., 31: "To permit wills to be defeated or in
any manner whatsoever impeached, by the parol declarations
of the testator, appears to me repugnant to the very genius
and spirit of the statute, and not to be allowed." Schouler
on Wills, sec. 243; 2 Whart. Ev., § 1010. After evidence
of external acts, having any tendency to control the free
agency of the testator, the testator's declarations may be
evidence to show the influence such external acts had on
the testator's mind. But we do not see how the evidence
proposed relates to this matter, or how it would tend to
show that the contents of the proposed will was not the
free and unbiased dictates of the testatrix's mind when she
signed the same.

The third ground of appeal cannot be sustained. A sub-
scribing witness may give his opinion as to the sanity of
the testator. In *Heyward* v. *Hazard*, 1 Bay, 349, the Court
said: "The business, then, of the persons required by statute
to be present at executing a will is not barely to at-
test the corporal act of signing, but to *try, judge*, and
*determine* whether the testator is *compos* to sign—
that is, of a sound mind as every will, upon the face of it,
imports." *Jeter* v. *Tucker*, 1 S. C., 245; Greenleaf on Ev.,
vol. 1, p. 440; Schouler on Wills, § 198.

The fourth exception alleges error in permitting the tes-
timony of S. P. Wingard, D. T. Barre, and S. P. Drafts as
to the general mental capacity of Mrs. Lucinda Drafts, they
not being experts. In the case of the witness, S. P. Wing-
ard, the record shows that this question was asked: "Q. She
did—who managed her own affairs? A. She did herself, so
far as— Objected to—not in reply." This objection was
overruled. As to D. T. Barre, the record shows: "Q. What
kind of mind and disposition did she have? Objected to—
not in reply." Objection overruled. As to S. P. Drafts:
"Q. Say whether or not she was intellectually, morally or
emotionally insane. Mr. Muller: We object; he is not an
expert. Objection sustained." It .is, therefore, manifest
that there is no foundation in the record for this fourth
exception.

As to the fifth exception. It is not well taken. To rebut
the idea of fraud or undue influence, and to show that the
will is the result of the deliberate mind of the testa-
tor, previous declarations of the testator consistent
with the scheme of the will are admissible in evi-
dence. Schouler on Wills, § 194; *Means* v. *Means*, 6 Rich.,
14; *McNinch* v. *Charles*, 2 Rich., 236.

As to the sixth exception, alleging error in allowing the
testimony of Mrs. Beeland, taken *de bene esse*, to be intro-
duced without any showing that the witness was absent and
without the jurisdiction of the Court, we think it is
not tenable. There was substantial compliance with
the requirements of sec. 2347, Rev. Stat., regulating
such testimony. The notice, the affidavit of the proponent,
and the certificate of the notary public all show that the
witness resided in Macon, Ga., in August, 1895, and the
trial was in February, 1896. There was nothing to suggest
to the Court that the witness was not then out of the State,
and in the absence of a contrary showing the presumption
was that the witness was then in the State of Georgia, her
place of residence.

The seventh exception charges error in allowing the let-

ters of Mrs. Lucinda Drafts to Mrs. Beeland to be introduced and read in evidence. These letters were introduced to show the assent of the testator to the provisions of the will. In *McNinch* v. *Charles*, 2 Rich., 238, the Court said: "Proof of previous declarations, in conformity with the ·provisions of a will, are constantly received in evidence in proof of the assent of testator. That such declarations are in writing, gives them additional effect, as indicating a deliberate purpose and excluding misapprehension of their import."

There was no error in refusing to charge the request to charge embodied in the tenth, eleventh and twelfth exceptions. So far as the exceptions refer to the reasons assigned by the Circuit Judge for refusing the requests we do not consider them, because the reasons assigned were mere memoranda made by the Judge on the paper containing the requests, were not spoken or read in the hearing of the jury, and constituted, therefore, no part of his charge.

There is no such doctrine here that a will must not be inconsistent with natural justice and must not be unequal. It would be very *unnatural justice* if a testator of sound mind and free will could not do as he pleases with his own property. As held in *Lee* v. *Lee*, 4 McCord, 181, "the law puts no restrictions upon a man's right to dispose of his property in any way his partialities or pride or caprice may prompt him;" and it was further held that [because] a will is unjust to one's relations is no legal reason that it should be considered an irrational act.

The mere omission of a child from a will of itself is no ground for impeaching the testator's capacity. *Kerkwood* v. *Gordon*, 7 Rich., 474. Besides involving an unsound proposition of law, the requests to charge involve a charge in respect to facts, since it was the jury's province to say whether the proof of capacity and violation was strong enough to sustain the will, or whether the proof of undue influence or fraud was sufficient to set it aside.

For similar reasons the thirteenth exception is also over-ruled.

We find no error of law in this case.   The verdict of the jury and the concurring decree of the Circuir Judge are abundantly supported by ths evidence.

The judgment of the the Circuit Court is affirmed.