### WALLINGFORD v. WEST. UNION TEL. CO.

1. EVIDENCE DE BENE ESSE.—Omission of attorney to sign notice to take testimony *de bene esse* by inadvertence, which in no wise misleads other party or prejudices his rights, is not fatal objection to its reception in evidence.
2. IBID.—SEAL—NOTARY PUBLIC.—Law does not require notary to state in certificate where examination took place, nor that it should be under seal; but if certificate on its face shows an intention to make it under seal, under 23 Stat., 48, it must be so construed.
3. EVIDENCE—HARMLESS ERROR—TELEGRAMS—MARKET.—In actions

against a telegraph company for damages for non-delivery of telegrams as to sale of stock, question as to best market from date of failure to deliver to date of actual sale, is too favorable to defendant for him to complain.

4. IBID.—TELEGRAMS—PLEADINGS.—In such action it is proper for addressee of telegram to say what would have been his answer, as that is an issue raised by the pleadings.

5. IBID.—IBID.—If it be error to rule out evidence by operator as to conversation between him and the proprietor of the hotel as to cause of non-delivery of telegram to guest of hotel, such error is cured by admission of statement by proprietor himself.

6. EXCEPTIONS—NONSUIT.—Upon exceptions to refusal of nonsuit, this Court can only consider grounds of motion made below.

7. NONSUIT.—There being some evidence tending to support the allegations of damages, nonsuit properly refused.

8. IBID.—TELEGRAMS—JURY—DAMAGES.—Failure to complete a trade on account of failure to hear from partner in reply to telegram sent asking for advice, properly submitted to the jury to determine the question of proximate cause of damages from failure to deliver message.

9. TELEGRAMS—JURY.—Whether terms of message tends to show its importance on question of notice to transmitter of its importance, properly submitted to the jury.

10. IBID.—CHARGE.—Explanation of request to charge that in suit against a telegraph company for failure to complete trade on account of non-delivery of message, it must appear that such delivery would have effected a binding contract, not reversible error.

11. REHEARING refused.

Before BUCHANAN, J., Greenwood, April, 1900. Affirmed.

From judgment on verdict for plaintiffs, defendant appeals.

*Messrs. Ansel, Cothran & Cothran,* for appellant, cite: *As to measure of damages:* 53 S. C., 410. *Negligence in delivery not the proximate cause:* 9 Ech., 353; 94 U. S., 496; Dud., 180; Sp., 550; 25 S. C., 70; 16 N. Y., 489; 41 N. Y., 544; 64 Wis., 531; 81 Ga., 285; 40 S. C., 524. *Error for attorneys not to sign notice to take testimony de bene esse:* Rev. Stat., 2345; 18 Stat., 373; 29 S. C., 48; 6 Ency.

P. & P., 513, 139; 14 *Ibid.*, 131. *Certificate of notary should have seal:* 9 S. E. R., 273; 39 S. C., 340; Rev. Stat., 587; 18 F. Ca., 1347; 7 *Id.*, 726; 4 Blatch., 416; 19 N. E. R., 462. *Action cannot be based on what a man would have done:* 41 N. Y., 544; 19 S. E. R., 100; 21 *Id.*, 457; 71 N. Y., 118; 124 U. S., 455; 4 Am. St. R., 134; 40 S. C., 524. *Information given messenger attempting to deliver improperly ruled out:* 10 Am. St. R., 772. *Non-delivery was not proximate cause of failure to trade:* 25 Ency., 1st ed., 838; 98 Mass., 232. *Error to charge correct principle inapplicable to issues on trial:* 15 S. C., 95. *Message itself must have effected binding contract:* 18 U. C. Q. B., 60.

*Messrs. Graydon & Giles,* contra, cite: *Where the notice to take testimony de bene esse shows on its face an intent on part of attorneys to sign, it is sufficient:* Rev. Stat., 2345; 30 S. C., 153. *Certificate need not state place of examination, if stated in notice:* 30 S. C., 153, 615. *Testimony of plaintiff as to what his answer to telegram would have been, properly admitted:* 40 L. R. A., 209. *Declarations of proprietor of hotel to messenger not admissible:* 56 Kan., 737; 40 L. R. A., 211. *Failure to deliver message to clerk or proprietor of hotel constitutes negligence:* 98 Ind., 566; 53 S. C., 410. *Message itself gave defendant sufficient notice of its importance:* 33 Ill., 440; 97 N. C., 57; 109 N. C., 300; 115 Ind., 191.

April 8, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The complaint herein, omitting the formal allegations, is as follows:

"V. That on the 27th day of December, 1895, the plaintiff engaged the defendant to transmit from the said town of Sheridan to the said town of Greenwood, and there to deliver to the said Sam. Wallingford, one of the plaintiffs herein, the following message: 'Sam. Wallingford, Greenwood, S. C.   Shall I sell Simms & Wathen load for hun-

dred, four months, six per cent.    S. L. Wallingford.' * * *

"VI. That the said defendant had notice of the importance of the said message, and the damage and loss that would likely fall upon plaintiffs, if the said message was not delivered promptly and correctly to the said Sam. Wallingford.

"VII. That the said message was from the son and partner of the said Sam. Wallingford, and one of the plaintiffs herein, who wished to know if he should sell a load of mules, consisting of thirty head and belonging to the plaintiffs, to Simms & Wathen at the price of $100 each, on four months time, at six per cent. interest.

"VIII. That said message was transmitted by the defendant to the said town of Greenwood, State of South Carolina, the residence of said Sam. Wallingford, and received by the agent of the defendant on the said 27th day of December, 1895.

"IX. That although said message was received by the agent of the defendant at Greenwood on the 27th day of December, 1895, the said defendant carelessly and negligently, and not regarding its duty in that behalf, failed to deliver said message to the said Sam. Wallingford for more than a week; that said Sam. Wallingford first learned of the transmission of said message for him through a letter from said S. L. Wallingford, his son and partner, at Sheridan, Indiana, when said Sam. Wallingford called at the office of the defendant in Greenwood, and received said message from the agent of the defendant, more than a week after its receipt at Greenwood by the said defendant.

"X. That the plaintiffs would have sold said load of mules, consisting of thirty head, at the price of $100 per head, which said price was offered to the plaintiffs by said Simms & Wathen, had not the said defendant carelessly and negligently failed to deliver the said message to the said Sam. Wallingford upon its receipt by the defendant at Greenwood, S. C., or within a reasonable time thereafter.

"XI. That by reason of the careless and negligent conduct

of defendant, in failing to deliver said message, the said Sam. Wallingford upon its receipt at Greenwood or within a reasonable time thereafter, the plaintiffs were unable to sell the said thirty head of mules for three months, and kept them at great care and expense to the plaintiffs, to wit: the sum of $7 per head per month in feed and attention, and at the end of said time sold said mules at great loss to the plaintiffs, to wit: at the price of $77.50 per head, which was the highest price they could get for them, making the total loss to the plaintiffs upon each of the said thirty head of mules, the sum of $43.50; and that thereby the plaintiffs have been damaged by the careless and negligent conduct of the defendant as aforesaid, in the sum of $1.305."

All except the formal allegations were denied. The jury rendered a verdict in favor of the plaintiffs for $675.

The defendant appealed upon exceptions, the first of which is as follows: "I. Question of admissibility of evidence.— (a) The Circuit Judge erred in refusing to reject the deposition of S. L. Wallingford upon the several grounds stated: (1) The original notice of taking said deposition was not signed by plaintiffs' attorneys. (2) The certificate of the notary public does not state where the examination of the witness was had. (3) The notary public does not, after his signature, state his jurisdiction or the source of his authority. (4) The certificate is not sealed with the seal of the notary public. (b) The Circuit Judge erred in allowing the question to the witness, S. L. Wallingford, and his answer thereto, as follows: 'Q. Where was the nearest market for such mules and what was the best market price for the same from the time of the offer up to the time of the sale? A. The nearest market where there were pens and an auction sale of such mules was at Indianapolis, Indiana, thirty miles from my place of residence, but there had been foreign buyers, who were in the habit of coming to my place of residence and buying such mules up to and previous to the said time of sale to Simms & Wathen, or the offer of such mules. And the best price that I had been offered from any one except

the offer of Simms & Wathen up to the time of the sale of such mules on January 18th, 1896, at $77.50, was $77.50 per head.' The error consisting in this: The measure of damages was the difference between the price offered and the market value at Sheridan on December 27th, 1895, if there was such market value there; if not, at the nearest market. This question and answer were not directed to this issue and were irrelevant. (c) The Circuit Judge erred in allowing the question to the witness, S. L. Wallingford, and his answer thereto, as follows: 'Q. Please state whether or not you could have sold the mules for a better price at any time from the time of the offer and the sending of the telegram to the time you did sell? A. No.' The error consisting in this: The measure of damages was the difference between the price offered and the market value at Sheridan, on December 27th, 1895, if there was such market value there; if not, at the nearest market. The testimony offered was competent only in the event that there was no market on that day at Sheridan or elsewhere. Of this there was no evidence. The testimony was, therefore, irrelevant. (d) The Circuit Judge erred in allowing the question to the witness, Sam. Walingford, and his answer thereto, as follows: 'Q. Suppose you had received that telegram when it ought to have been delivered, or in a reasonable time after it should have been delivered at Greenwood, what would have been your answer to S. L. Wallingford as to the sale of that carload of mules? A. My answer would have been to sell the mules.' The error consisting in this: Damages to be recovered must be the proximate result of the negligence alleged; that cannot be recovered upon evidence of what a man would have done under certain circumstances; that is too remote, contingent and speculative. (e) The Circuit Judge erred in excluding the testimony of the operator, M. M. Calhoun, as to replies made to him by T. F. Riley, proprietor of the hotel where Wallingford was boarding, when inquired of as to Wallingford's whereabouts; it being submitted that when an operator or messenger goes to a hotel for the pur-

pose of delivering a message to the addressee the declarations of the proprietor of the hotel as to the whereabouts of the addressee are competent upon the issue of negligence. (f) (The same objection is made in (f) to the exclusion of the testimony of S. L. Perrin, messenger.)"

"(a)" Assignment of error: The record discloses the following: "Mr. Graydon offered to read testimony taken *de bene esse* of S. L. Wallingford, a plaintiff. Mr. Cothran: We interpose two objections to the deposition. The first is that the notice is not signed by the plaintiffs' attorneys, and the second is that the certificate of the notary public does not state where the examination takes place, and again that it is not sealed by the notary public, as it should have been. When he signs, he signs 'Newton Cowgill Notary Public,' without stating notary public where, and without a seal. By the Court: I don't think that ought to be thrown out for that reason. I don't think it is a technical compliance (exceptions by Mr. Cothran)." All other objections were waived. *Hall* v. *Hall,* 45 S. C., 166. We will first dispose of the objection that the notice was not signed by the plaintiffs' attorneys. The complaint showed that Messrs. Graydon & Giles were the plaintiffs' attorneys; the affidavit of Mr. Giles attached to the notice showed that he was one of the plaintiffs' attorneys; the notice has at the bottom a blank space and the words "Plaintiff's Attorneys;" it appears upon the face of the notice that the name of said firm was omitted by inadvertence, which in no way misled the defendant nor prejudiced his rights, and the objection was properly overruled. *Bulwinkle* v. *Cramer,* 30 S. C., 153; *Moore* v. *Willard,* 30 S. C., 615; *Kaufman* v. *Caughman,* 49 S. C., 159; *Henderson* v. *Williams,* 57 S. C., 1.

We will next consider the objection that "the certificate of the notary public does not state where the examination takes place." The notice stated where the examination was to take place, and the notary public in his certificate says that

he took the testimony in pursuance of the notice. Furthermore, the statute does not require that the certificate of the officer taking the testimony should state where the examination took place.

The next question that will be considered is whether his Honor, the Circut Judge, erred in overruling the third objection hereinbefore mentioned, when Mr. Graydon offered to read the testimony. The certificate concludes as follows: "Witness my hand and official seat at Sheridan Hamilton County and State of Indiana this 18th day of November A. D. 1899. Newton W. Cowgill Notary Public" The notary public attached the word "seal" to the jurat of each deposition. The statute does not require the certificate to be under the seal of the officer taking the testimony; but if there were such requirements, it would have to be considered in connection with the act of 1899, entitled "An act to amend the law with regard to instruments in writing purporting to have been sealed" (23 Stat., 48), which provides: "That whenever it shall appear from the attestation clause or from the other parts of any instrument in writing that it was the intention of the party or parties thereto that said instrument should be a sealed instrument, then said instrument shall be construed to be and shall have the effect of a sealed instrument, although no seal be actually attached thereto." It appears from the attestation clause that the notary public intended to attach his official seal, and this was sufficient.

"(b)" Assignment of error: The object of this question was to ascertain the nearest market for said mules, and then to find out what was the best market price for the same from the time of the offer up to the time of the sale *at that market.* This was more favorable to the defendant than it had a right to expect, as it gave the defendant the benefit of a rise in the market to which it was not entitled. Quite a different question would have been presented, if the witness had been asked what was the lowest instead of the best price during the time mentioned.

"(c)" Assignment of error: This assignment of error is disposed of by what was said in considering "(b)."

"(d)" Assignment of error: This question was responsive to the allegations set forth in paragraph "X." of the complaint, which were denied. As this was an issue raised by the pleadings, and the testimony tended to establish the fact as alleged, it was properly admitted.

"(e)" Assignment of error: When cross-examined by Mr. Graydon, Mr. Calhoun said: "It is not my place to try to deliver the message myself. That is my messenger boy's place; but, as a matter of fact, I was down at the hotel that evening" (28th of December). It would seem that the information he sought was not in the scope of his employment; but even if there was error, it was not prejudicial, as Mr. T. F. Riley was allowed to state what information he gave as to the whereabouts of Sam. Wallingford. It cannot be contended that testimony as to what Mr. Riley said is higher in degree than the testimony of Mr. Riley when examined as a witness.

"(f)" Assignment of error is disposed of also by what had just been said.

The second exception is as follows: "The motion for nonsuit: The Circuit Judge erred in refusing defendant's motion for a nonsuit for the following reasons: (a) There was no evidence tending to fix the measure of damages according to the rule established by the Supreme Court. (1) The mules were at plaintiffs' farm, two miles from Sheridan, and the evidence shows that there was no market value there or at Sheridan. (2) The nearest market was either Indianapolis or New Orleans, and there is no evidence as to the market value at either place. (3) It does not appear that there was no market value anywhere on that day, in which case only testimony of the 'market price which could have been obtained at the earliest day thereafter' would have been competent. (4) There was no evidence of the market price which could have been obtained at the earliest day

14—60

thereafter. (5) The testimony shows that Wallingford was in Atlanta when the message reached Greenwood, did not return until Sunday, December 29th, 1895, and there is no evidence of the market value at Sheridan or elsewhere on December 30th, the earliest moment the telegram could have been delivered. (b) The alleged negligence of the defendant is not shown to have been the proximate cause of the damage sustained by the plaintiffs; it appearing from the evidence: (1) That the negotiations for the trade were broken off by the voluntary act of one of the partners, who knew of the failure of the telegram to reach the other partner. (2) The telegram was not intended to close a trade but to obtain advice. (3) Uncertain and contingent events happening between the alleged negligence and damage must have been resolved against the defendant to connect it with the loss, which is contrary to the rule; these contingencies being the nature of Sam. Wallingford's reply, the action of S. L. Wallingford upon receipt of that reply, the action of the proposed vendee upon receiving young Wallingford's answer. (c) The damages sustained by plaintiffs were not the direct and usual result of the alleged negligence of the defendant, they were in their nature special, notice of which was charged in the complaint to the defendant, but there is no evidence in support thereof. (d) There is no evidence of negligence on the part of the defendant."

The record shows that the following took place when the plaintiffs announced that they rested: Mr. Cothran: "We move for a nonsuit upon the ground that the plaintiffs have offered no evidence as to the measure of damage, as to the amount he has been damaged by the alleged negligence of the defendant; and second, that even if he has, the alleged negligence of the defendant company is not shown to have been the direct and proximate cause of the damage which he has sustained." These are the only questions that can be considered in determining whether there was error in refusing the motion for a nonsuit.

S. L. Wallingford was asked: "What was the cost

of keeping and attending to the mules per head from the time of the offer from Simms & Wathen to the time of the sale heretofore mentioned?"   His answer was: "Easily $5 per head."   This testimony alone is sufficient to show that the first objection was properly overruled.

The second objection urged by the defendant upon the motion for a nonsuit raises the most important question in the case.   The record discloses the following: "Question 10 (propounded to S. L. Wallingford) : State what agreement you had, if any, with Simms & Wathen as to the acceptance or rejection of their offer, and if you rejected it, state how and why you did so?   Answer: I *rejected it on account of not hearing from my father* in reply to the telegram sent to him, and I forwarded a telegram to Simms, *in compliance to an agreement with him that I would inform him of the acceptance or rejection of such offer after conferring with my father;* and having failed to hear from my father, I informed him that I could not accept the offer, or a message to that effect" (italics ours).   The telegram which S. L. Wallingford sent to Simms was as follows: "Failed to hear from father and trade is off."   In case of *Pickens* v. *R. R. Co.,* 54 S. C., 498, the Court uses this language: "Ordinarily, it is a question to be determined by the jury, whether the injury was caused proximately or remotely by the defendant's wrongful act; and this is the rule in all cases where the facts are susceptible of more than one inference.   3. In actions of tort founded simply upon negligence, the injury must be the natural and proximate result of the defendant's wrongful act. The rule is practically the same in actions for damages arising from a breach of contract."   The testimony of S. L. Wallingford, especially the words which we have italicized, show that he was under an agreement with Simms that he would inform him of the acceptance or rejection of the offer after conferring with his father, and that he rejected the offer on account of not hearing from his father.   The words "Fail to hear from father," when construed in the light of

said agreement, meant that S. L. Wallingford could not accept the offer of Simms & Wathen by reason of the fact that he had failed to get the desired information upon which he was to act from his father. The legal effect of this message, which he was compelled to send, under the terms of the agreement, was to terminate the negotiations. The words "and trade is off" expressed this result, and no doubt were inserted for the purpose of preventing misunderstanding and future complications. The natural and proximate result was to prevent S. L. Wallingford from being able to carry out his agreement, whereby the plaintiffs were damaged. The negligence of the defendant deprived S. L. Wallingford of the information necessary for his action in the premises, and this naturally and proximately caused the plaintiff to be damaged. The presiding Judge could not take from the jury the right to decide the issue of fact, as the testimony was susceptible of more than one inference.

The third exception is as follows: "III. The Judge's charge. (a) The Circuit Judge erred in modifying defendant's fourth request to charge as follows: 'That is true, Mr. Foreman, if he did it voluntarily, and it was not as a result of the non-delivery of a previous telegram.' The error consisting in this: It does not make any difference whether the declaration of the offer was made as a result of the non-delivery of the message or not, if it was done voluntarily and as the exercise of his judgment; this intervening efficient cause breaks the continuity between the negligence and the damage, thus preventing the negligence from being the proximate cause of the damage. (b) The Circuit Judge erred in refusing defendant's fifth request to charge. Said request contains a correct principle of law applicable to the case, and it was error to hold that a question of fact would thereby be passed upon by the Court. (c) The complaint alleges, paragraph VI., 'That the said defendant had notice of the importance of the said message, and the damage and loss that would likely fall upon the plaintiffs if said message was not delivered promptly and correctly.' There was no

evidence to support this allegation; the witness, S. L. Wallingford, testifying that he gave no such notice at the time he sent the message. The Circuit Judge, therefore, erred in charging the jury upon the effect of such 'an agreement as charged in the complaint,' and that they might take such understanding into consideration as enlarging the liability of the defendant and fixing the measure of damages. (d) The Circuit Judge erred in his modification and explanation of defendant's third request to charge. Said request was intended to convey the idea that in order to recover damages under the circumstances stated, the *message itself* must have effected a complete and binding contract, if properly delivered. The Circuit Judge misapprehended this meaning, and construed it to mean that if the parties to the negotiation fairly intended to complete their trade, which the message had reference to, plaintiffs could recover if such contract failed, notwithstanding one of the parties may have had a defense like the Statute of Frauds, which would have defeated an action upon it."

"(a)" Assignment of error: The fourth request is as follows: "4. Where one partner who has received an offer in the usual course of trade telegraphed his copartner for advice as to accepting it, and not hearing from him on account of the negligent failure of the telegraph company to deliver the message, voluntarily acts upon his own judgment and declines the offer, such negligence of the telegraph company is not the proximate cause of the loss sustained by failure to consummate the trade, and the defendant is not liable in damages upon proof that if the message had been reasonably delivered the copartner would have advised acceptance and trade would have been made." The presiding Judge said: "That is true, Mr. Foreman, if he did it voluntarily, and it was not as a result of the non-delivery of a previous telegram. If a man just chooses to do it, notwithstanding the fact there has not been an answer to the telegram, then he must not lay it to somebody else, if he chooses to do it himself independent of that fact. There must be some loss; it

must be a direct loss, it must be a proximate loss and the result of the negligence charged by the complaint on the part of the plaintiffs." The Circuit Judge left to the jury the determination of the question of fact whether the non-delivery of the message was the natural and proximate cause of the damage. As hereinbefore stated, this was proper, as more than one inference could reasonably be drawn from the testimony.

"(b)" Assignment of error: The fifth request is as follows: "5. Where an offer to buy is made to one partner, and he wires his copartner to know whether to accept it or not, if, not hearing from his copartner owing to the negligent delay of the telegraph company, the partner upon his own responsibility, and not being pressed thereto by his proposed vendee, declines the offer, it cannot be said that the loss of sale was due, directly, to the negligence of the company, and the jury should find for the company." The Circuit Judge said: "I cannot charge you that. It is a question of fact for you to say whether in any given case it is so or not." The presiding Judge could not have charged this request without taking from the jury the consideration of the fact whether the message from Wallingford to Simms was sent in pursuance of an agreement, as stated in the testimony of S. L. Wallingford. Even conceding that the partner upon his own responsibility, and not being pressed by his proposed vendee, declined the offer, it might, nevertheless, be said that the loss of sale was due directly to the negligence of the company, if the message was sent in pursuance of a previous agreement, and the failure to get the desired information through the negligence of the defendant, caused him to decline the offer to purchase made by Simms & Wathen.

"(c)" Assignment of error: The tenor of the message tended to show its importance, and the presiding Judge was correct in submitting the question of fact to the jury.

"(d)" Assignment of error: The third request was as follows: "3. Where, in an action against a telegraph com-

pany for failure to deliver a message, it is sought to recover damages for losses which would have been prevented by a sale which the message was designed to complete, it must appear that the delivery of the message to the party to whom it was directed would have effected a valid and binding contract." The Circuit Judge said: "That is true, Mr. Foreman. It does not mean, though, that the contract would not have been binding; it does not mean that there might have been a defense between A and B, the persons to whom the goods were to be sold, if one complained by reason of the fact that he did not make a contract as the result of the non-delivery of the telegram. Matters of defense that might set up you cannot consider here, but if the persons fairly intended to complete and perfect the sale contract, that is enough. It is for you to say in any given case whether or not that was the purpose, and if it had gone, how far; and I so charge you that." The Circuit Judge charged the request with certain explanations, in which we see no reversible error.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Upon filing of petition for rehearing, the remittitur was stayed until April 20, 1901, when the petition was refused by following order:

PER CURIAM—After a careful consideration of this petition, the Court is unable to discover that any material fact or principle of law has been either overlooked or disregarded, and hence there is no ground for a rehearing.

It is, therefore, ordered, that the petition be dismissed, and that the stay of the remittitur heretofore granted be revoked.