7222

### TALBERT v. WESTERN UNION TELEGRAPH CO.

1. APPEAL—HARMLESS ERROR—PLEADINGS.—After trial on merits, exception to refusal to strike out allegations, if error, will not be sustained unless appellant satisfy this Court that they, or the testimony submitted in support of them, were prejudicial to his rights.

2. EVIDENCE—DECLARATIONS.—Refusal to admit declarations of agent when delivering a telegram as to the cause of delay is remedied by evidence of the agent as to the cause.

3. MENTAL ANGUISH.—Principle that the mental anguish act does not include annoyance, disappointment or vexation, by failure to promptly transmit, contained in request refused, covered by general charge.

4. CHARGE.—Request to charge that in a case where the sender of a message knows the sendee is a stranger in the town addressed, and is stopping with one of another name, and fails to give a further address, is guilty of negligence, would be a charge on the facts.

5. MENTAL ANGUISH PRESUMED.—That the sending agent of the telegraph company knew the sendee of a message was the wife of the person referred to as being quite ill, raises the presumption that delay in delivery would cause mental anguish.

6. REHEARING refused.

Before WILSON, J., Edgefield, March, 1908.    Affirmed.

Action by Lillie C. Talbert against Western Union Telegraph Company.    From judgment for plaintiff, defendant appeals on the following exceptions:

"Because the presiding Judge erred:

1. "In not sustaining defendant's motion to strike out in paragraph 3 of the complaint the following words: 'with a relapse of typhoid fever;' and the words: 'between Columbia, S. C., and Asheville, N. C., with a spell of typhoid fever. That the plaintiff, his wife, had been with him and nursed him for about five weeks, when he became convalescent and seemed to be out of danger. That the plaintiff has an invalid son who needs her constant care and attention, and that she was thoroughly exhausted in mind and body by the double strain on her on account of the illness of her husband;' also the words: 'in order to recuperate her strength and in order to place her invalid son where he could have attention that he needed.' The said matters being irrelevant, not stating any element of damage for which the defendant was liable, were not in contemplation of the parties at the

time the message was filed for transmission, and there is no allegation in the complaint that such state of facts was made known to the defendant by the party filing the message, and the message does not on its face disclose such state of facts.

2. "In permitting F. P. McGowan, a witness for plaintiff, to testify, over objection of defendant's counsel, as follows: 'Q. Do you recall what her condition was at the time she came there?' (Referring to Mrs. Talbert's condition at the time she visited his house, at least two weeks prior to October 18, 1906.) A. Mrs. Talbert's condition? Q. Yes. A. She seemed to be rather wornout and tired and exhausted, physically, was not strong. Q. Whom did she have with her? A. A little boy, about eight years old. Q. What condition was he in? Objected to as irrelevant and incompetent. The company had no notice of it. The Court: I will let it in. Mr. Nelson: We would like objections to be noted to all this testimony. Q. (By Mr. Nicholson) What is the condition of the little boy? A. Paralytic; can't walk, but can talk; but can not feed himself without aid. Q. With reference to his mother's care, was he a care and a charge on her? A. Yes, sir. It was necessary for her to give him her personal time all the while. He will not allow any other person to attend to his wants, and she has to give him her constant attention.' Said testimony being irrelevant, not stating any element of damage for which the defendant was liable, and being in reference to circumstances not in contemplation of the parties at the time the message was filed for transmission, and the defendant was not then nor at any time advised of such state of facts, and the message itself on its face does not disclose any such state of facts.

3. "In not permitting the said F. P. McGowan, on cross-examination, to answer the following question: 'Q. Did Mr. McLeese say anything when he delivered the telegram with reference to the telegram; did Mr. McLeese make a statement to you with reference to this telegram, the cause

of its being delayed, the telegram in suit, at the time of its delivery?' The error being that the declarations of McLeese, who was the agent of the company at Laurens, accompanied the act of delivery to McGowan and tended to explain it, and was part of the *res gestae.*

4. "In refusing the motion of defendant's attorney to strike out the reasons given by the said F. P. McGowan why the plaintiff, Mrs. Talbert, did not go on the train on the night of the 18th of October. The reasons assigned by said witness were: 'I did not think that a lady with a paralytic child could safely go on that train, which left at 10 o'clock at night at Laurens and getting to Greenwood in the night;' and in permitting the said witness, over objection of defendant's counsel, to testify as to Mrs. Talbert's being partially blind, near-sighted, wearing glasses, and its being difficult for her to see at night, and that with this child he did not think it advisable for her to undertake to go on a freight train at night and try to make the trip to Parksville. The error being that it was merely the opinion of the witness, and he and the plaintiff determining that she should not take the night train was a voluntary act on her part for which the defendant could not be held responsible, and her failure to take the train was not the result of any act of the defendant.

5. "In permitting the plaintiff, Mrs. Lillie C. Talbert, over objection of defendant's counsel, to testify as follows: 'Q. Why did you leave your husband? Mr. Nelson: We object; irrelevant and incompetent. We are not charged with notice why she left for Mr. McGowan's. The Court: I will let that out to explain her conduct. Q. Why did you leave your husband and go back to McGowan's? A. I was weak and my baby was on my hands. He was nervous, could not stay in the house, and I had to keep him outdoors. Q. How old is that child? A. Eight years old. He is most like a baby. Q. He is a paralytic? A. Yes, sir. Q. What was your condition there? A. I was up, but not very strong; physically

weak.   Q. Why did you have to keep this child outdoors most of the time?   A. Because he was nervous and made a noise.   Mr. Nelson: We object.   The Court: I do not think that is an allegation of the complaint.   Mr. Nicholson: We don't insist on that.   Q. You stated you had this child and your husband?   A. Yes, sir.   Q. Why did you go to Laurens?   A. To rest, because my health was broken down. Q. You took the child with you?   Now, after you got to Mr. McGowan's, how long was it before the second telegram came?   A. It was about seven days, not quite a week.'   Said testimony being irrelevant and incompetent, in that the defendant was not charged with notice of the condition of plaintiff or of her child, or of the reasons why she left her husband, and said testimony failed to establish any cause of action which might exist against the defendant for its failure to deliver the said telegram; and said testimony was prejudicial to the defendant, in that it tended to show extraordinary damages, resulting from special circumstances, of which the defendant had no notice, for which it was not responsible, and of which the delay in the delivery of the telegram was not the proximate cause.

6. "In that he refused to charge the following portion, in italics, of defendant's fourth request to charge: '4. In an action such as this the defendant is charged with the suffering, if any, which the failure to deliver the message may reasonably be expected to produce when its contents are considered, not with the suffering due to a peculiar temperament, but that of an ordinary human being, *and under the mental anguish act the plaintiff in this case can not recover for the anxiety which she may have suffered on account of the illness of her husband, nor for any feeling of annoyance, disappointment or vexation she may have felt by reason of the failure to promptly transmit and deliver the telegram in question.*'   It being respectfully submitted, that the portion of the request refused (set out in italics) contained a sound proposition of law applicable to this case, in that plaintiff had

been permitted to testify as to her condition and that of her child and her husband over defendant's objection.

7. "In refusing defendant's twelfth request to charge: '12. In a case where the sender of a message knows that the addressee is a visitor in a strange city, staying with a relative whose name is not the same as the addressee, and fails to give any further address than the name of the city, I charge you the sender is guilty of negligence, and if this negligence should contribute as a proximate cause to delay in delivery of the message, neither the sender nor the addressee could recover damages.' The error being that said request correctly stated, hypothetically, a correct proposition of law applicable to this case.

8. "In charging plaintiff's third request to charge: '3. From the words contained in the telegram, set out in the complaint, the defendant company was charged with notice of the relationship between the plaintiff and her husband, Joe Talbert, and that mental suffering would result from the failure to deliver the telegram promptly, if the said telegram did refer to her husband, Joe Talbert.' The error being that it was for the jury to say, from the wording of the message and the testimony in the case, of what facts the defendant company had notice, and whether or not it should have inferred from such facts that mental anguish would result from a delay in the delivery of the said message, and in charging said request his Honor invaded the province of the jury.

9. "In refusing defendant's motion for a new trial: I. 'Because of error in refusing to strike out certain allegations of paragraph 3 of the complaint, to wit: the words, "with a relapse of typhoid fever. * * * between Columbia, S. C., and Asheville, N. C., with a spell of typhoid fever. That the plaintiff, his wife, had been with him and nursed him for about five weeks, when he became convalescent and seemed to be out of danger. That plaintiff had an invalid son, who needs her constant care and attention, and that she

was thoroughly exhausted in mind and body by the double strain on her on account of the illness of her husband;" and the words, "in order to recuperate her strength and in order to place her invalid son where he could have attention that he needed;" and in allowing plaintiff's witnesses, over objection of defendant's counsel, to give testimony in support of the allegations so sought to be stricken out of the complaint.'

II. "Because his Honor failed to charge the jury that in awarding damages they should not consider the allegations and testimony set out in the preceding exception.

III. "Because the verdict of the jury was against the preponderance of the evidence, in that there was a total failure on the part of the plaintiff to offer any testimony tending to show that the delay in the delivery of the telegram was the proximate cause of any damage she may have sustained.

IV. "Because the evidence shows that the negligence of the sender of the message, in failing to give a more definite address, contributed as a proximate cause to the damage alleged to have been sustained by the plaintiff.

V. "Because his Honor erred in refusing to charge defendant's twelfth request to charge, set out in exception 7."

*Messrs. Geo. H. Fearons* and *Nelson & Nelson,* for appellant, cite: *Evidence as to peculiar temperament should not have been admitted, there being no allegations to that effect:* 73 S. C., 520; 70 S. C., 418, 539; 76 S. C., 307; 79 S. C., 310; 69 S. C., 531; 70 S. C., 421; 72 S. C., 294; 74 S. C., 495. *Declarations of agent while delivering message are part of res gestae:* 72 S. C., 259; 78 S. C., 508. *Plaintiff could not recover for suffering caused by illness of her husband:* 70 S. C., 418; 69 S. C., 531; 78 S. C., 505; 72 S. C., 522; 81 S. C., 235; 61 S. W., 942. *Request does not assume as a fact any matter at issue:* Joyce Elec. Law, sec. 856; Jones Tel., sec. 316; 3 So., 566; 2 N. E., 209; 61 S.

W., 900; 77 S. C., 342; 70 S. C., 183; 58 S. C., 378; 47 S. C., 488.

*Messrs. J. Wm. Thurmond* and *B. E. Nicholson,* contra, cite: *There was no error in refusing to strike out certain parts of the complaint:* Code 1902, 163; 4 Ency. P. & P., 606; 75 S. C., 184. *Declarations of agent when delivering message not admissible, but if so ground was covered by his testimony:* 60 S. C., 209; 73 S. C., 379; 78 S. C., 502; 72 S. C., 352. *Anxiety, annoyance, etc., are included under mental anguish act:* 69 S. C., 534; 71 S. C., 29; 72 S. C., 516. *Knowledge of agent that sendee was wife of sick man mentioned in message gave company notice that mental anguish would result from delay:* 77 S. C., 174.

This opinion was filed May 27, 1909, but remittitur held up on petition for rehearing until

June 17, 1909. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages for mental anguish, alleged to have been suffered by the plaintiff on account of the delay in the delivery of the following telegram:

"Parksville, S. C., October 18, 1906.
Mrs. J. L. Talbert, Laurens, S. C.

Come at once; Joe not expected to live through night.

J. B. TALBERT."

"Joe" was plaintiff's husband, who was ill at his home near Parksville, and Mrs. Talbert was at the time visiting her sister, Mrs. F. P. McGowan, at Laurens, S. C. The telegram was handed to the agent at Parksville about 7 o'clock p. m., but was not delivered to the addressee until about 3:40 o'clock p. m. on the 19th of October. The agent at Parksville knew the plaintiff, and that she was the wife of Joe Talbert.

The complaint alleges negligence and wilfulness, but the claim for punitive damages was withdrawn at the close of plaintiff's testimony.

The jury rendered a verdict in favor of the plaintiff for $500.

The defendant made a motion for a new trial, which was refused.

The defendant appealed upon numerous exceptions, which will be set out in the report of the case.

In considering the exceptions we will adopt the arrangement followed by the appellant's attorneys in their written argument.

Exceptions 1, 2, 4, 5, and Subdivisions 1 and 11 of Exception 9. The allegations of the complaint, which the defendant's attorneys made a motion to strike out, were not intended to set forth an additional element of damages, but were merely of an explanatory nature. There has been a trial upon the merits; and, conceding that in strictness of pleading they were objectionable, the appellant has failed to satisfy this Court that they, or the testimony mentioned in the exceptions, were prejudicial to its rights.

Third Exception. J. M. McLeese afterwards was examined as a witness, and testified fully as to the cause of delay. It can not be successfully contended that testimony as to what McLeese said is higher in degree than his testimony, when examined as a witness. *Wallingford* v. *Tel. Co.,* 60 S. C., 201, 38 S. E., 443. Therefore, the refusal to allow the witness to answer the question was not prejudicial.

Sixth Exception. When the words in the request, which he refused to charge, are considered in connection with the entire charge, it will be seen that this exception can not be sustained.

Seventh Exception. This request was properly refused, as its submission would have invaded the province of the jury, and would have been a charge upon the facts.

Eighth Exception. As hereinbefore stated, the testimony showed that the agent at Parksville knew the plaintiff, and that she was the wife of Joe Talbert; and there was a presumption that delay in the delivery of the message would cause her mental anguish.

Subdivisions III, IV and V of Exception 9.

Subdivision III must be overruled, for the reason that it is only necessary to refer to the testimony to show that the plaintiff suffered mental anguish, for which the statute makes the defendant liable in damages.

Subdivision IV can not be sustained in the light of the testimony.

Subdivision V has already been disposed of.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE WOODS *concurs in the result.*

June 17, 1909. PER CURIAM. After careful consideration of the petition herein, the Court is satisfied that no material question of law or of fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition for rehearing be dismissed and that the order heretofore granted staying the remittitur be revoked.