## Case No. 9,635.

MINNESOTA LINSEED OIL CO. v. COLLIER WHITE LEAD CO.

[4 Dill. 431; Syllabi, 74; 15 Alb. Law J. 39; 24 Pittsb. Leg. J. 96.] [1]

Circuit Court, D. Minnesota. 1876.

CONTRACTS—BY TELEGRAPH—ACCEPTANCE—WHEN COMPLETE.

1. In "contracts by telegraph" the same rule as to acceptance prevails as in contracts by mail; the contract is completed when an acceptance of the proposition is deposited for transmission in the telegraph office.

[Cited in Garrettson v. North Atchison Bank, 47 Fed. 870.]

[Approved in Haas v. Myers, 111 Ill. 424, 426.]

2. In case of a proposition by telegraph for the sale of certain goods, the market for which was subject to sudden and great fluctuations, an immediate answer should be returned, and an acceptance of such proposition telegraphed after a delay of twenty-four hours from the time of its receipt was not an acceptance within a reasonable time, and did not operate to complete the contract.

[Cited in Ortman v. Weaver, 11 Fed. 362;

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 15 Alb. Law J. 39, and 24 Pittsb. Leg. J. 96, contain only partial reports.]

De Witt v. Chicago, B. & Q. Ry. Co., 41 Fed. 485; Marr v. Shaw, 51 Fed. 864.]
[Cited in Trounstine v. Sellers, 35 Kan. 447, 11 Pac. 444.]

This action was removed from the state court and a trial by jury waived. The plaintiff seeks to recover the sum of $2,151.50, with interest from September 20, 1875—a balance claimed to be due for oil sold to the defendant. The defendant, in its answer, alleges that on August 3d, 1875, a contract was entered into between the parties, whereby the plaintiff agreed to sell and deliver to the defendant, at the city of St. Louis, during the said month of August, twelve thousand four hundred and fifty (12,450) gallons of linseed oil for the price of fifty-eight (58) cents per gallon, and that the plaintiff has neglected and refused to deliver the oil according to the contract; that the market value of oil after August 3d and during the month was not less than seventy (70) cents per gallon, and therefore claims a set-off or counter-claim to plaintiff's cause of action. The reply of the plaintiff denies that any contract was entered into between it and defendant.

The plaintiff resided at Minneapolis, Minnesota, and the defendant was the resident agent of the plaintiff, at St. Louis, Missouri. The contract is alleged to have been made by telegraph.

The plaintiff sent the following dispatch to the defendant: "Minneapolis, July 29, 1875. To Alex. Easton, Secretary Collier White Lead Company, St. Louis, Missouri: Account of sales not enclosed in yours of 27th. Please wire us best offer for round lot named by you—one hundred barrels shipped. Minnesota Linseed Oil Company."

The following answer was received: "St. Louis, Mo., July 30, 1875. To the Minnesota Linseed Oil Company: Three hundred barrels fifty-five cents here, thirty days, no commission, August delivery. Answer. Collier Company."

The following reply was returned: "Minneapolis, July 31, 1875. Will accept fifty-eight cents (58c), on terms named in your telegram. Minnesota Linseed Oil Company."

This dispatch was transmitted Saturday, July 31, 1875, at 9:15 p. m., and was not delivered to the defendant in St. Louis, until Monday morning, August 2, between eight and nine o'clock.

On Tuesday, August 3, at 8:53 a. m., the following dispatch was deposited for transmission in the telegraph office: "St. Louis, Mo., August 3, 1875. To Minnesota Linseed Oil Company, Minneapolis: · Offer accepted—ship three hundred barrels as soon as possible. Collier Company."

The following telegrams passed between the parties after the last one was deposited in the office at St. Louis: "Minneapolis, August 3, 1875. To Collier Company, St. Louis: We must withdraw our offer wired July 31st. Minnesota Linseed Oil Company."

Answered: "St. Louis, August 3, 1875. Minnesota Linseed Oil Company: Sale effected before your request to withdraw was received. When will you ship? Collier Company."

It appeared that the market was very much unsettled, and that the price of oil was subject to sudden fluctuations during the month previous and at the time of this negotiation, varying from day to day, and ranging between fifty-five and seventy-five cents per gallon. It is urged by the defendant that the dispatch of Tuesday, August 3d, 1875, accepting the offer of the plaintiff transmitted July 31st, and delivered Monday morning, August 2d, concluded a contract for the sale of the twelve thousand four hundred and fifty gallons of oil. The plaintiff, on the contrary, claims, 1st, · that the dispatch accepting the proposition made July 31st, was not received until after the offer had been withdrawn; 2d, that the acceptance of the offer was not in due time; that the delay was unreasonable, and therefore no contract was completed.

Young & Newel, for plaintiff.
Geo. L. & Chas. E. Otis, for defendant.

NELSON, District Judge. It is well settled by the authorities in this country, and sustained by the later English decisions, that there is no difference in the rules governing the negotiation of contracts by corespondence through the post-office and by telegraph, and a contract is concluded when an acceptance of a proposition is deposited in the telegraph office for transmission. See 14 Am. Law Reg. 401, "Contracts by Telegraph," article by Judge Redfield, and authorities cited; also, Trevor v. Wood, 36 N. Y. 307.

The reason for this rule is well stated in Adams v. Lindsell, 1 Barn. & Ald. 681. The negotiation in that case was by post. The court said: "That if a bargain could not be closed by letter before the answer was received, no contract could be completed through the medium of the post-office; that if the one party was not bound by his offer when it was accepted (that is, at the time the letter of acceptance is deposited in the mail), then the other party ought not to be bound until after they had received a notification that the answer had been received and assented to, and that so it might go on ad infinitum." See, also, 5. Pa. St. 339; 11 N. Y. 441; Mactier v. Frith, 6 Wend. 103; 48 N. H. 14; 8 C. B. 225. In the case at bar the delivery of the message at the telegraph office signified the acceptance of the offer. If any contract was entered into, the meeting of minds was at 8:53 of the clock, on Tuesday morning, August 3d, and the subsequent dispatches are out of the case. 1 Pars. Cont. 482, 483.

This rule is not strenuously dissented from on the argument, and it is substantially admitted that the acceptance of an offer by

letter or by telegraph completes the contract, when such acceptance is put in the proper and usual way of being communicated by the agency employed to carry it; and that when an offer is made by telegraph, an acceptance by telegraph takes effect when the dispatch containing the acceptance is deposited for transmission in the telegraph office, and not when it is received by the other party. Conceding this, there remains only one question to decide, which will determine the issues: Was the acceptance of defendant deposited in the telegraph office Tuesday, August 3d, within a reasonable time, so as to consummate a contract binding upon the plaintiff?

It is undoubtedly the rule that when a proposition is made under the circumstances in this case, an acceptance concludes the contract if the offer is still open, and the mutual consent necessary to convert the offer of one party into a binding contract by the acceptance of the other is established, if such acceptance is within a reasonable time after the offer was received.

The better opinion is, that what is, or is not, a reasonable time, must depend upon the circumstances attending the negotiation, and the character of the subject matter of the contract, and in no better way can the intention of the parties be determined. If the negotiation is in respect to an article stable in price, there is not so much reason for an immediate acceptance of the offer, and the same rule would not apply as in a case where the negotiation related to an article subject to sudden and great fluctuations in the market.

The rule in regard to the length of the time an offer shall continue, and when an acceptance completes the contract, is laid down in Parsons on Contracts (volume 1, p. 482). He says: "It may be said that whether the offer be made for a time certain or not, the intention or understanding of the parties is to govern. * * * If no definite time is stated, then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose the parties contemplated; and the law will decide this to be that time which as rational men they ought to have understood each other to have had in mind." Applying this rule, it seems clear that the intention of the plaintiff, in making the offer by telegraph, to sell an article which fluctuates so much in price, must have been upon the understanding that the acceptance, if at all, should be immediate, and as soon after the receipt of the offer as would give a fair opportunity for consideration. The delay here was too long, and manifestly unjust to the plaintiff, for it afforded the defendant an opportunity to take advantage of a change in the market, and accept or refuse the offer as would best subserve its interests.

Judgment will be entered in favor of the plaintiff for the amount claimed. The counter-claim is denied. Judgment accordingly.