H. A. Stotesburg et al., Respondents, *v.* H. F.
Massengale, Appellant.

January 30, 1883.

1. Contract by Letter. — An offer by letter and an unconditional accept-
ance thereof constitute a contract.

2. —— Unconditional Acceptance. — A request, contained in a letter of
acceptance, that the proposer take certain action, does not necessarily
render the acceptance conditional.

3. Agency. — One who contracts to do business in the name of and through
another is bound by the acts of such other.

Appeal from the St. Louis Circuit Court, Boyle, J.
*Affirmed.*

Overall and Judson, for the appellant: To constitute
a contract by letter, the parties must agree, *ad idem*, to the
same thing in the same sense.  There must be a clear acces-
sion on " both sides to one and the same set of terms." —
1 Chitty on Con. 15, note ; *Bourne* v. *Shapleigh*, 9 Mo.
App. 64 ; *Herndon* v. *St. Louis R. Co.*, Sup. Ct. Mo.,
June, 1882 (not published).  " If acceptance modifies the
proposition in any sense, however trifling, it is no more than
a counter-proposition." — *Jenness* v. *Mt. Hope Iron Co.*,
53 Me. 23.  " Where there is a misunderstanding as to the
terms of a contract neither party is bound in law or
in equity." — *National Bank* v. *Hall*, 101 U. S. 43 (per
Justice Swayne) ; *Utley* v. *Donaldson*, 94 U. S. 29 ; *Baker*
v. *Johnson County*, 37 Iowa, 86.  Where the promise is
made before the credit is given, where any credit is given
to the party to whom goods are furnished, or he is liable at
all, the contract is collateral, and not original. — Brandt on
Surety., sects. 63, 64 ; *Cahill* v. *Bigelow*, 18 Pick. 370 ;
*Glenn* v. *Lehune*, 54 Mo. 45.  The negotiations manifestly
contemplated further action to fix the terms of any definite

contracts. — *Lyman* v. *Robinson*, 14 Allen, 254; *Ridgway* v. *Wharton*, 6 H. L. Cas. 268, 304.

Charles F. Joy and G. D. Bantz, for the respondents.

Bakewell, J. delivered the opinion of the court.

The petition alleges that the defendant was the agent of the plaintiffs to solicit purchasers of cotton and to collect money as it became due from purchasers of cotton at St. Louis; that, as such agent, the defendant collected $881 on account of the plaintiffs, which they have failed to remit. The answer is a general denial. The cause was tried without a jury, and there was a finding and judgment for the plaintiffs. The action was originally against Massengale and Haynes; but was dismissed as to Haynes.

It appears that Massengale, Cohen & Co. were in business as cotton buyers. Massengale resided in St. Louis and Cohen at Memphis. About December 1, 1880, they practically went out of business at St. Louis. Haynes, before that time, had been their book-keeper, and they then no longer needed his services, and his salary ceased. He retained their office, which remained as before, and was to pay the rent. Massengale was away during most of the time covered by the transactions hereafter set forth.

Haynes, on November 27, 1880, wrote to McClanahan, a member of the plaintiffs' firm, the following letter, marked "Confidential." The letter is addressed to New York, where the plaintiffs were doing business: —

"I am in the employment of Messrs. Massengale, Cohen & Co., and attend to the future branch of their business. Messrs. M., C. & Co. have as their New York correspondent Messrs. Henry Hentz & Co.

"They desire to retain Messrs. H. H. & Co.'s business for the purchase of spot cotton in this market, but from their disinclination to give them reports by wire of their opinion as to the course of the market, they lose a great

deal of business. Other brokers receive from their New York correspondents daily, early morning telegrams, giving the *status* of the market, and an opinion as to its probable course, which, as you can appreciate, has its influence upon the operators here.

" The future business which is proposed to be done with your house, although in my name, will be really the business of Messrs. M., C. & Co., and for which they will be responsible. This explanation Major Massengale thought wiser to defer until your arrival in our city. The relations between Messrs. H. H. & Co. and Messrs. M., C. & Co. have been, and are at present, of the most pleasant nature. It would be impossible to get orders for the purchase and sale of New York contracts, if I demanded an immediate margin. No other New York house requires it in this market. I solicit none but reliable and responsible parties — those that can well afford to lose. I have declined, and would do so again, to take orders from weak parties; if such parties are importunate, I require a margin before wiring the order, and even then put in stop instructions upon the exhaustion of the margin. I write this letter of explanation, which I trust you will treat confidentially, in consequence of an inquiry you have instituted in regard to my standing, etc., through Dunn's Commercial Agency.

" Very respectfully,

" L. A. HAYNES."

This letter was read by Massengale. The matter referred to in it had been talked over between him and Haynes before the letter was written. At the foot of the letter Massengale wrote as follows: —

" FRIEND MAC: I hope you will take the above as confidential. M., C. & Co. represent Mr. Hentz, which he would cancel if we divided our business. He does not keep us posted, and won't express an opinion so as to draw

orders to buy or sell, and we desire some one that will. Will explain further when you come.      Yours,

"H. T. M."

To this letter the plaintiffs replied as follows: —

"60 BROAD ST., NEW YORK, Dec. 2, 1880.
"*L. A. Haynes, Esq., St. Louis, Mo.*

"DEAR SIR: We are in receipt of your favor 27th ult. We will, of course, respect its confidential character. We will try and do your business satisfactorily, should we undertake it, keeping you advised of the changes in the market, and giving you an opinion of its course. We are doing a strictly commission business. We are conservative and prudent, and while willing to accept Messrs. Massengale, Cohen & Co.'s guarantee for a reasonable amount, we would expect you to remit promptly margins. Their guaranty to cover a few friends you may wish to indulge, which we would from experience advise you against."

Massengale read this letter shortly after it was received. Plaintiffs did not communicate in any way with any member of the firm of Massengale, Cohen & Co. Haynes then began taking orders for "futures," which he forwarded to plaintiffs. Haynes did the business in his own name, and the commissions were his.

On December 17th plaintiffs wrote to Haynes a letter, in which, after speaking at length of the market, they say: —

"Please have Messrs. Massengale, Cohen & Co. execute the guarantee papers, say $2,000 or $2,500, we presume will cover it. You are the only party we have on our books without margins. We go on the principle that a speculator should always have funds on hand. You have good names, but they may not want to pay when they lose. We have had cases of this kind with good parties."

Haynes answered at once, saying: "Major Massengale is South at present, and will return some time during

Christmas week, when he will attend to the guarantee papers."

On January 11, 1881, plaintiffs write to Haynes in regard to markets, and in answer to a telegram from him. At the end of this letter they say : "We have not heard from Major Massengale yet."

No guarantee papers were ever executed. Some of the customers who had lost on their speculations paid their margins to Haynes. Of the money thus collected, Haynes appropriated to his own use $881.68 toward the end of January, 1881. He was arrested for this at the instance of plaintiffs. There had been no correspondence between plaintiffs and defendants, except the postscript of Massengale to Haynes' letter in regard to the matter, or on any subject, during this period. No claim was made upon defendants until after Haynes' arrest ; nor were they notified of the matter.

The only oral testimony was that of Haynes and Massengale. Haynes says he showed to Massengale, when he happened to be in town, the orders he received, but not for his approval. Massengale says he had no business connection with Haynes after December 1, 1880 ; knew nothing of the orders that Haynes took ; had no interest in, or knowledge of, the transactions ; and that he expected, after his postscript to Haynes' letter, to see plaintiff McClanahan in St. Louis and talk to him about the matter.

The court declared the law to be, that, "There is no evidence that defendant Massengale actually participated in the transactions in question, or shared in the profits or commissions earned, and he can only be charged, if at all, by the legal construction given to the correspondence of the parties received in evidence ; " and that, "If the letter of November 27th was approved of by defendant Massengale and sent to plaintiffs, and they, within a reasonable time thereafter, made contracts on the faith of the statements contained in id letter, then they will be held to have ac-

cepted the proposition made in said letter, and the defendant Massengale is liable to plaintiffs for acts of Haynes in connection with said contracts, and his acts in that regard are the acts of defendants.''

An offer and acceptance constitute a bargain. The acceptance, however, must be unconditional. A conditional acceptance is a new offer, which requires acceptance in its turn to close the bargain. A slight change suggested in the answer to the terms proposed will make a new proposition. *Falls Wire Co.* v. *Broderick*, 12 Mo. App. 378. Applying these well-settled principles, we see no error in the finding of the trial court or in the construction which is given to the writings in this case.

The letter of November 27th seems to be a definite proposition from Massengale, Cohen & Co. that a business in "futures" should be done with plaintiffs in the name of Haynes, to be really the business of Massengale & Co., for which they would be responsible. The "Will explain further when you come" in the postscript, is naturally to be taken as referring to the matter of the postscript, the confidential reasons why Massengale & Co. do not wish the business carried on in their own name.

If the letter of December 2d is to be taken as a refusal of the offer as made, and an offer to trade with Haynes on Haynes' responsibility, Haynes to give the guarantee of Massengale & Co. to the amount of $2,500, then, of course, defendant Massengale is not liable. But we do not so understand it. When plaintiffs speak of "your business" they must be taken to mean Massengale & Co.'s business done through Haynes, as it had been explained to them that it would be done. No proposition had been made to them to do business for Haynes except as Haynes was to be used as a cover for Massengale & Co. They suggest that Massengale & Co. should give a guaranty, not for Haynes, but for defaults of customers, if Massengale & Co. should occasionally wish to indulge customers. The proposed

plan is then carried into effect without waiting for the guaranty. But there seems to have been a complete meeting of minds so far as this, that Haynes, in this business, was Massengale & Co. so far as plaintiffs were concerned, and that his acts in the business were theirs and his defaults theirs. The parties seem to have agreed *ad idem* so far as this; and this was the whole agreement. It was suggested that Haynes — that is, that Massengale & Co. — should, if they desired to indulge, now and then, an irresponsible friend, give a guaranty to cover any such margins as ought to have been put up. No such guaranty was given. It does not appear that any such indulgence was given. This action certainly is not for any margins that ought to have been, but were not, collected. The guaranty is suggested, but it is not intimated that if Massengale & Co. do not give it, they shall not become agents of plaintiffs to solicit purchases of cotton and to collect from purchasers. So far is this from being the case, that plaintiffs, after their letter, act on that of defendant and fill Haynes' orders, of which Massengale has notice. We do not understand the letter of plaintiffs as refusing to look to Massengale & Co. as originally liable, and suggesting that Haynes should be originally liable and Massengale & Co. become collaterally responsible to the extent of $2,500. As to this, there was no counter-proposition, and no misunderstanding of the terms of the contract.

The fact that the name of Haynes was on plaintiffs' books does not show that they gave him credit, for it was agreed that " Haynes " meant "Massengale & Co."

The letter of November 27th was to all purposes the letter of Massengale & Co. Immediately after their reply to it, plaintiffs, on the faith of the statements contained in it, made contracts, and this was known to Massengale & Co., unless we interpret the answer of plaintiffs as a rejection of the proposition that Massengale & Co. should be primarily liable, and as a suggestion that Haynes alone should

be primarily liable, and that Massengale & Co. should give a guaranty for a reasonable amount, not to exceed $2,500. We do not think that that is its meaning; and, if that is not its meaning, no doubt the facts show an acceptance of the proposition of Massengale & Co. brought home to them in such a way as to bind them.

We think that the judgment should be affirmed.    All the judges concur.