## N. B. ELAM, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

### Kansas City Court of Appeals, June 5, 1905.

1. **TELEGRAPH COMPANIES: Evidence: Abbreviations.** Where telegrams relating to business matters are obscure but the terms are understood in the line of business mentioned, evidence making certain what is uncertain will be received to show that the sender and the recipient of the message mutually understood the same.

2. ——: ——: **Contract: Proposal: Acceptance.** Where a merchant sends a telegram quoting commodities at a given price in given conditions and the receiver replies ordering certain quantities of the commodities, a contract is effected, since the first telegram was a proposal and the lattter an acceptance; and the first party may testify whether he would have complied with the telegram of acceptance had he received it.

3. ——: **Failure to Deliver: Damages.** A dealer in potatoes received a telegram from his merchant giving quotations. He delivered to the telegraph company a reply ordering certain quantities. He had at the time contracts outstanding for the quantities ordered. The company failed to deliver his telegram and he was compelled to buy on his home market at an advance. *Held* he was entitled to recover from the telegraph company the difference in price he was compelled to pay for the potatoes.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

AFFIRMED.

*McIndoe & Thurman* for appellant.

(1)   Kennedy, the addressee of the telegram should not have been permitted to testify what he would have done or that he would have accepted and filled the order in case the message had been delivered. Nor should he have been permitted to testify what he would have understood it to mean. What he would have done is speculative, remote and contingent. Lumber Co. v. Tel. Co.,

44 S. E. 309; Tel. Co. v. Ferguson, 60 N. E. 674; Fisher v. Tel. Co., 96 N. W. 545; Reynolds v. Tel. Co., 81 Mo. App. 266; Mfg. Co. v. Mfg. Co., 3 L. R. A. 593; Smith v. Tel. Co, 83 Ky. 109, 4 Am. St. Rep. 126. (2) The damages claimed are speculative, remote, contingent and remote. Reynolds v. Tel. Co., 81 Mo. App. 266; Postal v. Bartwise, 53 Pac. 252; Bank v. Tel. Co., 30 Ohio St. 555; Hughes v. Tel. Co., 79 Mo. App. 138; 8 Am. & Eng. Ency. of Law (2 Ed.), p. 618; Hughes v. Hood, 50 Mo. 350; Ables v. Tel. Co., 37 Mo. App. 555; Tel. Co. v. Hall, 124 U. S. 444; Lumber Co. v. Tel. Co., supra; Smith v. Tel. Co., supra; Trans. Co. v. Morrison, 178 U. S.. 262; Johnson v. Tel. Co., 29 So. Rep. 787. (3) The message from plaintiff to Kennedy was vague, obscure and unintelligible, and even if it would have formed a contract between plaintiff and Kennedy, only nominal damages can be recovered. Hughes v. Tel. Co., 79 Mo. App. 138; Ables v. Tel. Co., 37 Mo. App. 555; Barrett v. Tel. Co., 42 Mo. App. 542.

*Cole, Burnett & Moore* for respondent.

(1) Appellant says Kennedy should not have been permitted to testify what he would have done or that he would have accepted and filled the order had he received the message. In treating of transactions of this character the authorities are to the contrary. Markel v. Tel. Co., 19 Mo. App. 87; Harper v. Tel. Co., 92 Mo. App. 311; Squire v. Tel. Co., 98 Mass. 234; 27 Am. & Eng. Ency. of Law (2 Ed.), 1068; Meggett v. Tel. Co., 69 Miss. 198; Tel. Co. v. Burnes (Tex.), 70 S. W. 784. (2) Appellant also complains that Kennedy and Elam were permitted to testify what the message meant. But the Reynolds case, cited by counsel, does not aid them; so far as it affects the subject it is to the contrary, and so is the law generally. Pepper v. Tel. Co., 87 Tenn. 554, 10 Am. St. Rep. 699, 25 Am. & Eng. Cor. Cas. 542, 9 Cyc. 583; Newberry v. Durand, 87 Mo. App. 294-5;

Thompson v. Thorne, 83 Mo. App. 245. (3 ) On appellant's proposition that the damages are "speculative, contingent and remote," we suggest that the authorities say that "profits which would have certainly been realized but for defendant's fault are recoverable," and "if the plaintiff had an agreement with his seller for a definite quantity at a fixed price, and acting on the assumption that his message would be delivered, had resold for delivery upon arrival of the goods," he could recover this profit. Reynolds v. Tel. Co., 81 Mo. App. 231; 27 Am. & Eng. Ency. of Law (2 Ed.), p. 1068, note 1, and cases there cited. (4) "When the telegraph company wholly fails to transmit or deliver a message ordering goods, the measure of damages is the difference between the price which was due under the order and that which the plaintiff was or would be obliged to pay at the same place in order, by due diligence, after knowing of the company's failure, to purchase a like quality and quantity of goods." 27 Am. & Eng. Ency. of Law, p. 1067, and cases cited; Squire v. Tel. Co., 98 Mass. 238. (5) Bearing in mind we are dealing with telegrams, this message was not vague and indefinite. Business telegrams warn the company of the importance of conveying them accurately or damages may result. Strahorn v. Tel. Co., 101 Mo. App. 505; 27 Am. & Eng. Ency. of Law, p. 1063, 1064, and cases cited; Pepper v. Tel. Co., supra. In argument counsel lay much stress upon the contention that there was not a completed contract between plaintiff and Kennedy. This does not aid defendant. McGregor v. Tel. Co., 85 Mo. App. 308, 9 Cyc. 294; Stotesburg v. Massengale, 13 Mo. App. 226; Hauck v. Sharpe, 83 Mo. App. 390; Scott v. Davis, 141 Mo. App. 225.

BROADDUS, P. J.—The plaintiff's suit is for damages for the failure of defendant to deliver a certain telegram for the purchase of potatoes. The petition was

in three counts. The two first were for damages and
the third for the statutory penalty. The plaintiff dis-
missed as to the first and recovered $97.50 on the second
count. The finding was for defendant on the third
count. The defendant appealed from the judgment on
the second count.

The facts are as follows: On the 24th day of Feb-
ruary, 1904, in response to plaintiff's inquiries by tele-
graphic communication had over defendant's telegraph
lines as to the price of certain kinds of potatoes at the
then market price, he received from J. H. Kennedy,
who was engaged in the wholesale grain and potato bus-
iness at Minneapolis, Minn., the following telegram,
viz.: "N. B. Elam, Lamar, Mo. Rose dollar four, Ohio
dollar fourteen, Triumph dollar twelve sacked Lamar.
J. H. KENNEDY." On the 25th of said month plaintiff
delivered to defendant's agent and operator in charge
of its office at Lamar for transmission to said J. H. Ken-
nedy at Minneapolis the following telegram: "J. H.
Kennedy, Minneapolis, Minn. Two hundred Rose, two
hundred Ohio, one hundred Triumph. N. B. ELAM."

Plaintiff paid to defendant's agent fifty cents, the
regular charge for such service. Through defendant's
fault the message was never delivered. The plaintiff at
the time had contracts to sell in lots to different dealers
in potatoes two hundred bushels of Rose, two hundred
bushels of Ohio and one hundred bushels of Triumph
potatoes. As the telegram to Kennedy was not deliver-
ed, he did not ship to plaintiff any potatoes whatever;
in consequence of which, plaintiff was compelled to buy
on his home market other potatoes at an advanced price,
the difference being $97.50, to comply with his said con-
tracts of sale. It was shown that the word "hundred"
in the telegram meant bushels; that "Ohio," meant Ohio
potatoes; "Rose," Rose potatoes and "Triumph," Tri-
umph potatoes; and that they were so understood by
Kennedy. The latter was permitted to testify that had

he received the mislaid and undelivered telegram sent by plaintiff he would have shipped the potatoes called for, as he understood the telegram called for potatoes of the kind and quantity stated.

The first contention of defendant is: "Kennedy should not have been permitted to testify what he would have done, or that he would have accepted and filled the order in case the message had been delivered. Nor should he have been permitted to testify what he would have understood it to mean. What he would have done is speculative, remote and contingent." Many cases are cited to sustain defendant's position. In Reynolds v. Tel. Co., 81 Mo. App. 223, the court held that it was competent to explain abbreviations in words. "A wife signed a statement made in the partnership book of her husband and another party to the effect that she ratified certain accounts in the book so far as any of her property was concerned. It was held that 'parol evidence was admissible to show all the facts and circumstances under which the writing was signed so that the court could determine what was probably meant by the language.' " In Thompson v. Thorne, 83 Mo. App. 241, it is held that, it was competent to explain the uncertain meaning of terms used in an insurance policy. It is well known that for the purpose of convenience and economy people resorting to the telegraph for business or other purposes very generally use only so many words as may be necessary to make known to the recipient the meaning intended to be conveyed by the message. This mode of correspondence results in both the contraction and omission of words ordinarily used. The use of the telegraph is an improved and rapid means for distant communication. The courts are bound by the very necessity of the conditions to apply existing legal principles to the interpretation of telegraphic messages. For instance, if terms are used in a message the meaning of which is obscure, and such terms are in general use and under-

stood among those engaged in the business to which it refers to have a definite meaning the court will receive such evidence for the purposes of making certain that which was uncertain. And also upon the same principle, it is competent in other instances to show that as between the sender and the recipient of a message the communication is mutually understood.

The contention of defendant that it was error in permitting Kennedy to testify that he would have accepted and filled plaintiff's order, had the message been delivered, we do not think is supported by authority. We are of the opinion that defendant's statement of the question is misleading. It was not a question what he would have done, but what he was legally bound to do under the circumstances. If the telegram had been delivered, it seems to us that it constituted a contract, for Kennedy had offered to plaintiff the kind and quantity of potatoes at fixed prices, and the message, if received, was an acceptance of the offer and as such was a contract in writing, binding on the parties. If Kennedy had received the message and delivered the potatoes in sacks to plaintiff at Lamar he would have been legally bound to accept and pay for them at the prices designated. If plaintiff would have been so bound to Kennedy then there was a corresponding obligation upon his part to deliver the potatoes to plaintiff. The case is different from that where a customer merely makes an order on his merchant for goods which does not constitute a sale until the goods are delivered, or the order accepted.

"A contract is made when both parties agree to it. If the offer is made by letter, then it is made where the party receiving the proposition puts into the mail his answer accepting it, or does any equivalent act." [Hauck Clothing Co. v. Sharpe, 83 Mo. App. 385.] An offer and acceptance constitute a bargain. [Stotesburg v. Massengale, 13 Mo. App. 226.] On this question we take it for granted that it is not necessary to quote authorities.

We will not comment on the authorities cited by appellant to sustain its position for the reason that they do not apply.

As the plaintiff had contracts binding him to deliver potatoes of the kind and quantity described, and as he was compelled to go on the market and purchase others for the purpose of complying with his contracts, he was entitled to the difference between what he was to pay Kennedy and what he was compelled to pay for them in the market. The damages were not in any sense speculative but were actual and certain in amount.

The case was tried upon the correct theory and there was no error in giving plaintiff's instructions. Affirmed. All concur.