## PROPELLER TOW-BOAT COMPANY OF SAVANNAH *v.* WESTERN UNION TELEGRAPH COMPANY.

1. Where an agent sends a telegram for an undisclosed principal, the principal may maintain an action in his own name for damages resulting from an error in transmission which brought about delay in the delivery of the telegram.
2. The petition set forth a cause of action, and the damages claimed were not too remote to be the subject of a legal recovery.

Argued November 14,—Decided December 21, 1905.

Action for damages. Before Judge Norwood. City court of Savannah. May 15, 1905.

The Propeller Tow-Boat Company of Savannah sued the telegraph company for damages on account of an error in the transmission of a telegram. From the petition it appeared, that the plaintiff entered into a charter-party with the Savannah Lighterage and Transfer Company, by which the plaintiff became the lessee of the Lighterage Company's schooner "Hilda." Under the terms of the charter-party six lay-days were allowed for loading the schooner, and "for each and every day's detention by default of said party of the second part [the Tow-Boat Company], or agent, $56.00 per day shall be paid by said party of the second part, or agent, to said party of the first part, or agent." While the schooner lay at Lambert's Point, Virginia, the plaintiff, desiring that it should proceed to Newport News, Virginia, requested the Lighterage Company to so instruct the captain of the schooner; whereupon that company, acting as the plaintiff's agent in this respect, delivered to the Western Union Telegraph Company a telegram, which the telegraph

company undertook to transmit and deliver, addressed to the captain, instructing him to proceed to Newport News. No answer being received, the Lighterage Company, at the plaintiff's request, on December 18, 1903, again telegraphed to the captain of the schooner to proceed to Newport News. The first telegram, by reason of an error in transmission, had not been delivered, and both telegrams were delivered at the same time, on December 18, 1903. Immediately on the receipt of these telegrams the schooner proceeded to Newport News, arriving there December 19, 1903, but, having to wait for its turn at loading, did not complete loading until December 28, 1903. The schooner arrived at Lambert's Point on December 11, 1903, and having six lay-days for loading, if the telegram of December 15, 1903, had been delivered promptly, could have proceeded at once to Newport News and loaded without delay, completing the loading within the six lay-days; but, by reason of the failure to deliver the telegram until December 18, the schooner did not reach Newport News until December 19; and between December 16 and December 19 so many vessels had come in that the loading of the "Hilda" was delayed until December 28. The petition alleged that for this delay the Tow-Boat Company was compelled to pay and did pay the Lighterage Company demurrage, as agreed in the charter-party, $56 per day for ten and three quarters days, amounting to $602. Judgment for this amount was prayed. A general demurrer to the petition was sustained, and the plaintiff excepted.

*O'Connor, O'Byrne & Hartridge,* for plaintiff.
*Osborne & Lawrence,* for defendant.

COBB, P. J. The telegram which has given rise to this controversy was sent by the Lighterage Company to the captain of the schooner "Hilda." The Lighterage Company, in so sending the telegram, acted as the agent of the Tow-Boat Company, the latter being an undisclosed principal. There is no question about the right of an undisclosed principal to sue a telegraph company for negligence in the delivery of telegrams. "The governing principle is that an undisclosed principal, as the ultimate party in interest, is entitled, against third persons, to all advantages and benefits of such acts and contracts of his agent, and consequently that he may sue in his own name on such contracts. Story, Ag. §418." *Dodd Grocery*

*Company* v. *Postal Telegraph Company,* 112 *Ga.* 685; and see cases cited. The judge in the court below based his ruling, sustaining the demurrer to the petition, upon the ground that before recovery could be had of the Telegraph Company the plaintiff must show itself to have been under a legal obligation to pay the amount of demurrage to the Lighterage Company which it now seeks as damages arising from the failure of the Telegraph Company to deliver promptly the message sent over its line. Under this test the plaintiff made out a case. The charter-party provides: "It is agreed that the lay-days for loading shall be as follows: six (6) days. And that for each and every day's detention by default of said party of the second part, or agent, $56.00 per day shall be paid by said party of the second part, or agent, to said party of the first part, or agent." The Telegraph Company, after its acceptance of the message for transmission, became the agent of the Tow-Boat Company. Its negligent failure to deliver the telegram was the negligent act of its principal, so far as the Lighterage Company was concerned. See *Western Union Tel. Co.* v. *Lumber Co.,* 114 *Ga.* 580; *Western Union Tel. Co.* v. *Shotter,* 71 *Ga.* 760; *Brooke* v. *Western Union Tel. Co.,* 119 *Ga.* 694. Had the Lighterage Company sued the plaintiff in this case for the demurrage justly due it, the plaintiff could not have escaped liability under cover of the Western Union Telegraph Company's negligence.

It was said that the damages were too remote. In the case of *Western Union Tel. Co.* v. *Fatman,* 73 *Ga.* 285, the court held that the commissions a ship broker would have made by securing a vessel were proper damages for the non-delivery of a telegram. Mr. Chief Justice Jackson said: "The damages are said to be too remote. Not so. They were precisely what the plaintiff would have made by his contract with Nisbet if the cablegram had reached him at 11.10 A. M." And in the case of *Walden* v. *Western Union Tel. Co.,* 105 *Ga.* 275, where a shipment of guano was ordered by wire, and it appeared that the intending purchaser had contracted with other parties for the sale of such guano, the non-delivery of his telegram, which prevented the shipment to him of the guano, gave rise to an action for damages, in which the measure was the amount he would have earned had he been able to carry out his contract for the sale of the guano.

Counsel for the defendant relies upon the cases of *Georgia Rail-*

*road* v. *Hayden,* 71 *Ga.* 518, and *White* v. *Blitch,* 112 *Ga.* 775, as authority to show that the damages claimed in the present case were too remote and speculative to be the basis of a recovery. We think, however, that these cases are distinguishable from the case at bar. In the case first referred to, stress was laid upon the fact that the railway company was ignorant of the peculiar character of the business of the traveler, and there was nothing in the case to put the company upon notice that a delay of the train upon which the traveler was riding would occasion a loss to him. In the second case cited, damages were claimed for a failure to furnish machinery for ginning cotton in thorough repair and machinery suitable for ginning a crop of a given year, the damages claimed being the diminution in the market value of cotton; and it was held that the pleading which set up this damage did not set forth sufficient facts from which it could be determined whether or not such damages had been sustained, even if they were legally recoverable. And as to whether the damages claimed for the rotting of a portion of the cotton and the decrease in weight were recoverable, it was said that it could not be reasonably claimed they were sustained because of the plaintiff's failure to comply with his undertaking, and it was further said there were no sufficient facts set forth in the pleading to show that the conclusion stated therein was correct. It is to be noted in reference to these cases that neither was decided by a full bench, the first being decided by two Justices and the last by five Justices.　　*Judgment reversed. All the Justices concur.*