## WESTERN UNION TELEGRAPH CO. v. ALLEN.

No. 1134.   Opinion Filed September 26, 1911.

Rehearing Denied November 14, 1911.

(119 Pac. 981.)

1.　　**TELEGRAPHS AND TELEPHONES**—Operation—Failure to Deliver Message—**Liability.** Allen directed Moore, as his agent, to see if he could purchase land for $1,600, and, if so, to wire him in Iowa, when he would send the money to pay for it. Moore sent the wire by the telegraph company pursuant to Allen's instruction. The telegraph company failed to deliver the message, and subsequently Moore bought the land himself. **Held,** that the telegraph company was liable for damages.

2.　　**SAME**—Failure to Deliver Message—**Liabilities.** When a principal instructs his agent to communicate with him by wire and the agent does so, the telegraph company becomes the principal agent for the transmission of the message, and its neglect, as between the principal and the agent, is the neglect of the principal, and the agent is not bound to seek some other method of communication where he has no knowledge of the non-delivery of the message.

(Syllabus by Ames, C.)

*Error from District Court, Bryan County; D. A. Richardson, Judge.*

Action by Charles R. Allen against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Utterback & Hayes, Shartel, Keaton & Wells,* and *George H. Fearons,* for plaintiff in error.

*Hatchett & Ferguson,* for defendant in error.

Opinion by AMES, C. This is an action brought by Charles R. Allen, as plaintiff, against the Western Union Telegraph Company, as defendant, to recover damages for failure to deliver a telegram sent to Allen at Hawarden, Iowa, by one Moore from Pauls Valley, Okla. The plaintiff recovered judgment in the trial court, and the defendant brings the cause to this court by petition in error.

The facts are substantially as follows: About the 1st of August, 1908, the plaintiff, who was then a resident of Hawarden, Iowa, was in Pauls Valley, Okla., where he met E. M. Moore, a real estate agent of that city, and was shown, amongst others, a tract of land known as the "Hull land." The plaintiff told Moore that he would pay $1,600 for this land, and if Moore ascertained that it could be bought for that price to wire him at Hawarden and he would send the money. Later in the month, Moore ascertained that he could procure the land at the agreed price, and on August 24th sent the following telegram by the Western Union Telegraph Company to plaintiff:

"Pauls Valley, Okla. August 24, 1908. To Chas. R. Allen, 1st Natl. Bank, Hawarden, Iowa. Have closed deal on Hull land sixteen hundred; wire amount to Natl. Bank of Commerce or instructions." ·

This telegram was never delivered to the plaintiff or to the bank. A day or two afterwards Moore entered into the following contract with Hull:

"This agreement made and entered into this 25th day of August, 1908, by and between William Hull of White Bead,

Oklahoma, and E. M. Moore, of Pauls Valley, agent for Chas. R. Allen, of Sioux City, Iowa, the said Hull constituting the first party, and E. M. Moore the agent for Allen, the party of the second part. The first party has this day bargained and sold to said second party, or agent for whom, 100 acres of land, more or less according to the government survey, same being located in the county of McClain, Oklahoma, and more fully described as follows: The west half of the northwest quarter of sec. 1, and the east half of the southeast quarter of the northeast quarter of sec. 2, T. 6 N., R. 3 W. The said Charles Allen being in Iowa the first party agrees to grant a reasonable time in which to close deal, and also agrees to take immediate steps to have abstract of title gotten up, and to execute a warranty deed to same. Should there be any default upon the part of the party of the second part, then party of the first part hereby agrees that E. M. Moore shall take place of second party, said Moore to assume and comply with all requirements as specified by Chas. R. Allen, or his agent. As consideration for the above 100 acres of land the second party will pay $1,600, when first party shall furnish a perfect abstract, and shall deposit deed properly executed in the National Bank of Commerce. Second party also deposits in escrow $200 in National Bank of Com. in same to be forfeited to said first party in case of a noncompliance by party of the second part. .

"Signed this Aug. 26, 1908.

"WILLIAM HULL, First Party.
"CHAS. R. ALLEN, Second Party.
"By E. M. MOORE, Agent."

Not hearing from Allen, Moore bought the land himself, as provided in the contract, and after holding it a few weeks sold it for a profit of $800, and it was agreed at the trial that in the event that plaintiff was entitled to recover, the amount of his recovery should be $800. Some time after Moore had sold the land Allen was again in Pauls Valley, and in conversation with Moore learned for the first time that the telegram had been sent him. Thereafter he brought suit against the telegraph company for the damages sustained by its failure to deliver the message. And after judgment was rendered against the defendant it brought the case to this court by petition in error.

In the brief of the plaintiff in error it is said:

"We think that the following points may be taken as established: (1) That Moore was acting as the agent of the plaintiff Allen; that both had examined the land and Allen had agreed to take the land for $1,600. (2) That the company received the message in question at Pauls Valley, on the evening of August 24th, and was negligent in the delivery of the same at Hawarden, Iowa. (3) That if the message had been received, plaintiff would have at once accepted the land at the price offered. (4) That the land in question was shortly afterwards worth $800 in advance of the price paid. (5) That on August 26th a contract was consummated, and the agent Moore took the title in himself and paid for the same. (6) That, after sending the telegram, the agent, Moore, made no further effort to communicate with his principal, and did not see him or communicate with him until several weeks alter when Allen returned to that section."

While conceding that it was negligent in not delivering the message to Allen, the telegraph company insists that the plaintiff should not have recovered, because Moore, as Allen's agent, was bound to follow up this first telegram by a second, or by a letter, or by some other method of communication, and that as Moore was Allen's agent and purchased the property in his own name, that this purchase inured to the benefit of Allen, and that, therefore, Moore held the title in trust for Allen; and, further, that the property was first deeded to Allen and his interest could not have been divested except by his own acts; and lastly, the court erred in refusing instructions which it requested and in giving those contained in the charge. It seems that if Moore discharged his duty under the law to Allen, that this is decisive of the case, and that all of the errors assigned depend upon the correct answer to this inquiry.

It will be observed from the contract that Moore described himself as Allen's agent, that he deposited $200 of his own money, to be forfeited in the event the land was not purchased, and that it was expressly provided that, in the event Allen should default, Moore might take his place and purchase the property himself. It is, of course, true that an agent is charged with the exercise of good faith in dealing with his principal, and that if, at the instruction of his principal, he acquires property, he

does so for the benefit of the principal. *Rose v. Hayden*, 35 Kan. 106, 10 Pac. 554, 57 Am. Rep. 145; *Chastain v. Smith*, 30 Ga. 96. But this is true when the agent violates his duty to his principal.

In the case at bar, however, Moore's duty to plaintiff was a matter of agreement between them, and when parties have made their own agreements it is the function of the courts to enforce them, and the extent of their rights then becomes a matter of agreement and not a matter of duty imposed by law. It is an established and conceded fact that the plaintiff chose his own method by which Moore was to communicate with him, namely, the telegraph, and when Moore sent the telegram he did exactly what Allen had directed him to do, and we cannot say that it was Moore's duty to do more than both he and Allen had agreed should be done.

It is a well-settled principle of law, both in this country and in England, that where a party making an offer of a contract has stipulated the method of acceptance, he is bound by an acceptance in that method whether he receives it or not. If, for instance, an offer is made by mail with directions to accept by mail, the posting of the letter of acceptance completes the contract. *Tayloe v. Merchants' Fire Ins. Co.*, 9 How. 390, 13 L. Ed. 187; *Mactier v. Frith*, 6 Wend. (N. Y.) 103, 21 Am. Dec. 262; *McClintock v. South Penn. Oil Co.*, 146 Pa. 144, 23 Atl. 211, 28 Am. St. Rep. 785; *Northampton Ins. Co. v. Tuttle*, 40 N. J. Law, 476. The rule is the same with reference to the telegraph. *Minnesota Oil Co. v. Collier*, 4 Dill. 431, Fed. Cas. No. 9,635; *Brauer v. Shaw*, 168 Mass. 198, 46 N. E. 617, 60 Am. St. Rep. 387; *Trevor v. Wood*, 36 N. Y. 307, 93 Am. Dec. 511; *Haas v. Myers*, 111 Ill. 421, 53 Am. Rep. 634.

In *Household Fire Insurance Co. v. Grant*, 4 Ex. D. 216, the Court of Appeals, as quoted in section 40 of Anson on Contracts, says:

"As soon as the letter of acceptance is delivered to the post office the contract is made as complete and final and absolutely binding as if the acceptor had put his letter into the hands of a

messenger sent by the officer himself as his agent to deliver the offer and receive the acceptance."

The reason of the rule applies to the case at bar. The plaintiff had chosen the telegraph company as his agent through which the notice from Moore was to be transmitted. When Moore delivered the message to the telegraph company at Pauls Valley, as between him and Allen it was a delivery to Allen's agent, and therefore a delivery to Allen himself, and it was not necessary for Moore to use some other method than that which Allen himself had selected. As Allen, in law, received the message, so far as his rights against Moore are concerned, it was not necessary for Moore to repeat it, or communicate in some other way which had not been agreed upon, and as Allen did not accept the proposition, did not send instructions, and did not send the money to the bank as requested, Moore had a right to purchase the land for himself, and the telegraph company, having failed to perform its duty in the matter, is liable to Allen for the damages which he sustained, and, as the amount of the damages was agreed upon, there is no question in the case affecting the measure of damages.

Several cases are cited by the plaintiff in error, holding that it is the duty of one who has sent a telegraph message to use reasonable care to mitigate the damages which he may sustain by reason of its nondelivery, but in some of those cases the sender knew of the nondelivery, and in the others the fundamental fact in this case was not presented—that is, there was no question of a notice being given in the manner agreed upon by the parties.

All of the errors assigned relate back to this fundamental proposition, except that the deed from Hull to Moore was delivered and passed title. On this point, however, the evidence does not sufficiently show that the deed was delivered.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

All the Justices concur.