## WESTERN UNION TELEGRAPH CO. v. SIGHTS *et al.*

No. 1880.    Opinion Filed August 20, 1912.

(126 Pac. 234.)

1.  **APPEAL AND ERROR—Case-Made—Time—Motion to Dismiss.** On a motion to dismiss for the reason that the case-made was not served within the time prescribed by the order of the court, where it appears from an examination of the record that the only date referred to in the journal entry is not the date on which the motion for new trial was overruled and the time given, the words "from this date" in the journal entry will be construed as applying to the date on which it is filed, and not the date on which the trial was commenced.

-2.  **TELEGRAPHS AND TELEPHONES—Nondelivery of Message—Damages—Evidence—Contract.** In an action against a telegraph company to recover for the negligent nondelivery of a message containing an offer to make a contract, evidence that if the message had been delivered the offer would have been accepted is competent.

3.  **SAME.** Compensatory damages may be recovered from a telegraph company for failure to deliver a message containing an offer to enter into a contract, where there is competent evidence establishing the proper measure of damages.

4.  **SAME—Limit of Liability—Validity.** Under section 9 of article 23 of the Constitution, which provides that "any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void," a condition printed on the back of a telegraph message, which provides that "the company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission," is not binding.

(Syllabus by Ames, C.)

*Error from District Court, Custer County;*
*James R. Tolbert, Judge.*

Action by A. P. Sights and W. Jorgenson against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

*Snodgrass & Darnell, Geo. H. Fearons,* and *Shartel, Keaton & Wells,* for plaintiff in error.

*Andrew J. Welch,* for defendants in error.

Opinion by AMES, C.   The first question to determine is the motion to dismiss the appeal, which was passed for consideration until the case was taken up on its merits.   The motion is based upon the contention that the case-made was not served within the time fixed by the order of the court.   The record shows that the trial was commenced on January 11, 1910; that the instructions were filed on January 12th; that the verdict of the jury was filed on January 12th; that on January 14th a motion for new trial was filed; that on February 7th a journal entry was filed, which commences with the recital, "This case came on to be heard before the court on the 11th day of January, 1910."   It then contains a recital of the proceedings in the case, showing the introduction of the evidence, the giving of the instructions, the submission to the jury, the return of the verdict, the motion for new trial, the judgment, and the concluding paragraph contains this: "Upon application of the defendant, good cause being shown, the defendant is allowed ninety days from this date to make and serve a case-made.   *   *   *"   The motion to dismiss is based upon the contention that the words "from this date" mean from the date first recited, to wit, January 11th, while the defendant argues that the words mean from February 7th, the day on which the journal entry was filed.   The journal entry should have recited the dates on which these various proceedings were taken; and it is manifest from its recital that they were not all taken on the 11th, because the remainder of the record proves the contrary.   It must follow, therefore, that the words "from this date" cannot refer to January 11th.   There being no other date referred to in the journal entry, and it being apparent that January 11th is not the date intended, we resolve the doubt in favor of the hearing of the case upon its merits, and hold that the motion to dismiss should be overruled.

The action was brought to recover damages from the telegraph company for failure to deliver a message reading as follows:

"Feb. 17, 1908. Mr. Jordan Sights, Bucklyn, Mo. Ans. to yours of 14th. 130 yearlings past weight 700, 30 calves weight 500, short horn bought around Clinton, price 4 cts. weighed at Keosoqua and delivered to Santa Fe one car each, $27.00; two cars each $26.50. If you can take two answer by wire I will come on next train. [Signed] A. P. Sights."

Plaintiffs allege that if the telegram had been delivered to the addressee he would have purchased the cattle therein described, and that by reason of the failure to sell to him the plaintiffs were damaged. They further allege that the letter referred to in the telegram offered to take a portion of said cattle at the price of four cents. The testimony tended to show that the plaintiff Sights was engaged in the live stock business; that he owned these cattle, located at Keosoqua, Iowa; that he delivered the telegram set out to the company at Clinton, Okla.; that he inquired of the agent about its delivery on the next morning; that the agent said he would send a tracer; that the message was never delivered; that the sendee of the message had written the sender with reference to purchasing some of these cattle; and that if he had received the message he would have purchased them, and was ready, able, and willing to pay for them. The case was submitted to the jury, and judgment rendered for the plaintiffs.

It is first argued that the court erred in permitting the sendee of the message to testify that if he had received the message he would have purchased the cattle. In the brief the defendant suggests the following points as admitted: First. That it received the message as set out in the petition; that it was reduced to writing by defendant's agent in the presence and with the consent of the sender, on a regular blank, with the usual conditions on its back. Second. That the company failed to deliver the message in time for it to fulfill its purpose; that the sendee lived about four miles from Bucklyn, Mo., but was well known in Bucklyn. Third. That the message related to a business transaction, and that the defendant would be liable for such damages as would naturally and reasonably arise from such delay. Fourth. That the plaintiff was the owner of the cattle described; that they were for sale; that they were subsequently sold for $3.70

per cwt. in Kansas City; that they were 37 hours *en route* to Kansas City, and showed a shrinkage during transit.

If the telegraph company negligently failed to deliver the telegram, the plaintiffs' measure of damages would be the loss which would naturally and probably result from the breach of its duty. It is manifest that if the sendee would have refused to purchase the cattle, had he received the message, the plaintiffs would not have been injured by its nondelivery; and it seems equally manifest that if the sendee would have purchased the cattle at the price stated, this would be material evidence as tending to show that the plaintiffs were damaged, and we can imagine no better way of proving this fact than by the testimony of the sendee. *Hasbrouck v. Western Union Tel. Co.*, 107 Iowa, 160, 77 N. W. 1034, 70 Am. St. Rep. 181; *Wallingford v. Western Union Tel. Co.*, 60 S. C. 201, 38 S. E. 443, 629; *Elam v. Western Union Tel. Co.*, 113 Mo. App. 538, 88 S. W. 115; *Willis v. Western Union Tel. Co.*, 69 S. C. 531, 48 S. E. 538, 104 Am. St. Rep. 828, 2 Ann. Cas. 52; *Carter v. Western Union Tel. Co.*, 141 N. C. 374, 54 S. E. 274; *Bright v. Western Union Tel. Co.*, 132 N. C. 317, 43 S. E. 841.

It is next argued that the testimony is "inconclusive and insufficient"; that a mere offer is not a sufficient basis of damages, and there is no certainty that a legal contract would have been consummated; and that the proposed acceptance of the sendee did not correspond with the terms of the offer.

There being competent evidence tending to show that the defendant failed to deliver the telegram, that if it had been delivered the sendee would have purchased the cattle, and that the damages were sustained by reason of its nondelivery, the conclusiveness of this evidence was properly submitted to the jury.

The defendant cites the following cases in support of the proposition that nondelivery of a telegram containing a mere offer to make a contract will not support an action for compensatory damages, because there is no certainty that a legal contract would have been consummated: *Beatty Lumber Co. v. Western Union Tel. Co.*, 52 W. Va. 410, 44 S. E. 309; *Cherokee Tanning Extract Co. v. Western Union Tel. Co.*, 143 N. C. 376, 55 S. E. 777,

118 Am. St. Rep. 806; *Hall v. Western Union Tel. Co.,* 59 Fla. 275, 51 South. 819, 27 L. R. A. (N. S.) 639; *Western Union Tel. Co. v. Adams Mch. Co.,* 92 Miss. 849, 47 South. 412. *Beatty Lumber Co. v. Western Union Tel. Co., supra,* and *Cherokee Tanning Extract Co. v. Western Union. Tel. Co., supra,* seem to support this proposition. *Hall v. Western Union Tel. Co., supra,* and *Western Union Tel. Co. v. Adams Mch. Co., supra,* are distinguishable. It is well settled that when a message, which is delayed in transmission, or not delivered at all, is a definite acceptance of an offer, the telegraph company is liable for compensatory damages, if it is negligent. *Alexander v. Western Union Tel. Co.,* 66 Miss. 161, 5 South. 397, 3 L. R. A. 71, 14 Am. St. Rep. 556; *Rittenhouse v. Independent Line Tel. Co.,* 44 N. Y. 263, 4 Am. Rep. 673; *United States Tel. Co. v. Wenger,* 55 Pa. 262, 93 Am. Dec. 751; *Western Union Tel. Co. v. Hyer Bros.,* 22 Fla. 637, 1 South. 129, 1 Am. St. Rep. 222; *Daugherty v. American Union Tel. Co.,* 75 Ala. 168, 51 Am. Rep. 435; *True v. International Tel. Co.,* 60 Me. 9, 11 Am. Rep. 156.

In *Western Union Tel. Co. v. Allen,* 30 Okla. 229, 233, 119 Pac. 981, 982, we said:

"It is a well-settled principle of law, both in this country and in England, that where a party making an offer of a contract has stipulated the method of acceptance he is bound by an acceptance in that method, whether he receives it or not. If, for instance, an offer is made by mail, with directions to accept by mail, the posting of the letter of acceptance completes the contract. *Tayloe v. Merchants' Fire Ins. Co.,* 9 How. 390, 13 L. Ed. 187; *Mactier v. Frith,* 6 Wend. (N. Y.) 103, 21 Am. Dec. 262; *McClintock v. South. Penn. Oil Co.,* 146 Pa. 144, 23 Atl. 211, 28 Am. St. Rep. 785; *Northampton Ins. Co. v. Tuttle,* 40 N. J. Law, 476. The rule is the same with reference to the telegraph. *Minnesota Oil Co. v. Collier,* 4 Dill. 431, Fed. Cas. No. 9,635; *Brauer v. Shaw,* 168 Mass. 198, 46 N. E. 617, 60 Am. St. Rep. 387; *Trevor v. Wood,* 36 N. Y. 307, 93 Am. Dec. 511; *Haas v. Myers,* 111 Ill. 421, 53 Am. Rep. 634."

It being true that a contract thus made by telegraph furnishes a basis of recovery, if the message of acceptance is not delivered, and we having already held in this opinion that it is competent to offer evidence tending to show that the sendee would

have accepted if he had received the offer, we do not see any good reason for refusing a recovery where the negligence of the telegraph company is in failing to deliver the telegram containing the offer, instead of the telegram containing the acceptance. The action for damages against the telegraph company is not on the contract, but for its negligence in preventing the making of the contract; and it seems to us that those courts which hold that compensatory damages cannot be recovered for negligent failure to deliver a telegram containing an offer overlook this distinction. The telegraph company is liable for the damages proximately caused by its negligent nondelivery of a telegram. If the proximate result of the nondelivery of the offer is to prevent the making of a contract, it seems to us that the telegraph company ought to be liable for the damages caused by the loss of the contract. This principle is supported by the following authorities: *Thorp v. Western Union Tel. Co.,* 118 Mo. App. 398, 94 S. W. 554; *Propeller Tow-Boat Co. v. Western Union Tel. Co.,* 124 Ga. 478, 52 S. E. 766; *Wallingford v. Western Union Tel. Co.,* 60 S. C. 201, 38 S. E. 443, 629; *Larsen v. Postal Tel. Cable Co.,* 150 Iowa, 748, 130 N. W. 813; *Texas & W. Tel. & Tel. Co. v. Mackenzie,* 36 Tex. Civ. App. 178, 81 S. W. 581; *Postal Telegraph-Cable Co. v. Louisville Cotton Oil Co.,* 136 Ky. 843, 122 S. W. 852, 125 S. W. 266; *Western Union Tel. Co. v. Williams,* 57 Tex. Civ. App. 267, 122 S. W. 280.

As previously stated, the authorities are in substantial agreement that, where the message which is not delivered is an acceptance of an offer, the telegraph company is liable for compensatory damages (*Western Union Tel. Co. v. Blackwell Milling & Elevator Co.,* 24 Okla. 535, 103 Pac. 717, 138 Am. St. Rep. 893); while there is a conflict of authority in cases where the message is not delivered, and is an offer, instead of an acceptance of an offer. Of course, the general rule prevails that the company is liable only for those damages which might reasonably be anticipated, and which are the direct and proximate consequence of the breach of duty. In the case of the acceptance of an offer, the telegraph company knows that the contract has been completed, and the general rule at once applies. In a case where the tele-

gram merely makes an offer, the company knows that an offer has been made, which may result in an acceptance if it does its duty. It is its duty to exercise the highest care to deliver the message; and if it fails to do so it must know that the contract will not be made, and, therefore, that loss may follow. It does not know that loss will surely follow; but it does know that loss may follow, and that its negligence may prevent the opportunity of making a contract. If, therefore, on the trial it is established that a contract would have been made, had the telegraph company discharged its duty, it does not seem to us that the company is in position to say that it did not discharge its duty, and therefore no contract was made, and therefore no damages proximately·resulted, because this defense is based upon the assertion of its own negligence, and it takes advantage of its own wrong to defend against the.consequence of its wrong. We therefore hold that' when the message which is not delivered is a mere offer of a contract, the telegraph company, for its negligence, is liable in damages, if its negligence prevented the making of the contract.

. What we have said disposes of the remaining subdivisions of the argument under the first heading of the plaintiff in error, including the instructions referred to in its brief.

The telegraph blank on which the message was written contained a number of printed conditions on its back, amongst which is the following:

"The Company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the Company for transmission."

And it is argued that this clause prevents recovery. Section 9, of article 23 of the Constitution (Williams' Ann. Const. Okla. [358]), provides that "any provision of any contract or agreement, express or implied, stipulating for notice or demand other than such as may be provided by law, as a condition precedent to establish any claim, demand, or liability, shall be null and void." Under this provision of the Constitution (this case having arisen since statehood), the 60-day limitation on the telegraph blank is not binding in this case. *Western Union Tel. Co. v. Crawford,*

29 Okla. 143, 116 Pac. 925, 35 L. R. A. (N. S.) 930; *Gray v. Reliable Ins. Co.,* 26 Okla. 592, 110 Pac. 728.

In *C., R. I. & P. Ry. Co. v. Conway, ante,* 125 Pac. 1110, and a number of earlier cases therein cited, it has been held that certain provisions for notice in railroad bills of lading are valid; but those cases arose prior to statehood, and this provision of the Constitution was not then considered.

Various other errors are assigned relating to the introduction of evidence and the giving of instructions; but it is unnecessary to examine them *seriatim.* It is sufficient to say that we think there is no reversible error, and that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.